[No. B144531. Second Dist., Div. Four. July 24, 2001.]

CRAIG A. MOBLEY, Plaintiff and Appellant, v.
LOS ANGELES UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.A.

1222

**COUNSEL**

Craig A. Mobley, in pro. per., for Plaintiff and Appellant.

Bergman, Wedner & Dacey, Gregory M. Bergman, Gregory A. Wedner, Alan H. Mittelman and Nathan A. Reierson for Defendants and Respondents

Los Angeles Unified School District, Kirk Rascoe, Charla A. Curtis and Tybouy Tang-Wong.

Melanie V. Slaton for Defendants and Respondents Department of Industrial Relations and Julie Macey.

## OPINION

**CURRY, J.**—Appellant Craig A. Mobley brought suit against the Los Angeles Unified School District (LAUSD), the Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE), and five individuals in a dispute arising out of his alleged failure to pay prevailing wages to his workers in connection with a school construction project. Demurrer was sustained on the ground that the petition was barred by a 60-day statute of limitations, other claims were barred by a one-year statute of limitations, and the individuals were immune from suit. We conclude that DLSE failed to afford appellant the hearing to which he was entitled and that the claim was not barred by the statute of limitations, and therefore reverse as to DLSE. We affirm as to all other parties.

### FACTUAL AND PROCEDURAL BACKGROUND

*The Subcontract*

In April 1996, appellant entered into a subcontract with general contractor Lewis Jorge Construction Management, Inc. (the contractor) to perform, in the words of the subcontract, "ALL 'LATH & PLASTER SYSTEM' work" on the Queen Anne Place Elementary School project for LAUSD. Under the contract, every worker was to be paid "not less than the prevailing wage rate for this area . . . ." This is a requirement of state law and must be included in any public works contract. (Lab. Code, §§ 1771, 1773.2.)

*The February 1997 Letter*

In January 1997, appellant wrote to the Department of Industrial Relations, Division of Labor Statistics and Research requesting prevailing wage information. In response, appellant received correspondence from Dorothy Vuksich dated February 24, 1997. The letter stated that it was enclosing copies of the "General Prevailing Wage Determinations" made by the Director of the Department of Industrial Relations for all crafts within the county. The letter further provided: "When referencing our prevailing wage determinations, please note that if the prevailing wage determination which

was in effect on the bid advertisement date of a project has a double asterisk (\*\*) after the expiration date, the rate must be updated on the following date to reflect the predetermined rate change(s). However, if the prevailing wage determination which was in effect on the bid advertisement date of a project has a single asterisk (\*) after the expiration date, the rate will be good for the life of the project."

The letter went on to state: "For purposes of public works projects, prevailing wage rate requests should include the bid advertisement date, craft(s)/classifications(s), and location of the project. Since your letter does not provide us with the exact bid advertisement date, nor the appropriate craft(s)/classification(s), we must stress that the enclosed determinations are strictly for informational purposes only."

### Prevailing Wage Dispute and Request for Hearing

On June 10, 1998, a notice to withhold was issued by LAUSD signed by contract compliance officer Milton Frazier, directing the contractor to withhold $19,849.83 from amounts payable to appellant, representing $12,449.83 in wages and $7,400 in penalties. On June 11, 1998, a letter was sent to the contractor, also signed by Frazier, warning that a prevailing wage violation complaint had been filed for failure to pay the correct prevailing wages. A "conference . . . to afford . . . the opportunity to introduce any mitigating factors" was scheduled for June 25, 1998.

The contractor sent a letter to appellant notifying him of the "hearing" scheduled with LAUSD. The letter explained that there appeared to be "a problem regarding misclassification and also overtime pay" and "[i]t appears they are questioning the Laborer/Laborer Trainee pay rate, the mix of Journeyman vs. Apprentices, and the pay rate of some Saturday work."

The June 25, 1998, meeting between LAUSD and appellant apparently went forward without resolving the dispute. On August 16, 1999, after much further correspondence, appellant requested a formal administrative hearing pursuant to title 8 of the California Code of Regulations, section 16414, which provides that upon request of a party, a hearing will be conducted by DLSE to determine whether or not reasonable cause exists for the retention of funds set forth in a notice to withhold. Section 16414 is part of a set of emergency regulations which took effect on February 16, 1999.

LAUSD protested that at the time the notice to withhold issued, the regulations were not in place and that, therefore, appellant's situation was not covered. LAUSD also argued that appellant had been afforded the

necessary due process intended by the emergency regulations at the June 25 meeting. Appellant, who was at that time represented by counsel, argued in response that he had not been given an opportunity to produce evidence or cross-examine witnesses at the June 25 meeting, and that it was not appropriate for LAUSD, the party that withheld the funds, to have the final say on whether the retention was reasonable. The hearing officer, Julie Macey, decided to go forward with the administrative hearing, based in part on the "understanding that the project has not been completed or formally accepted, and [LAUSD] continues to withhold funds based on the alleged prevailing wage violations."

*Administrative Hearing*

The hearing was held on October 14, 1999. The hearing officer stated at the start that the purpose of the hearing was "not to reach a final determination as to whether or not prevailing wages were properly paid, but rather whether or not there [was] reasonable cause to withhold sums set forth on a Notice to Withhold pending a final determination." Charla A. Curtis, the labor compliance coordinator who had replaced Milton Frazier, and Tybouy Tang-Wong, a labor compliance technician, appeared on behalf of LAUSD.

Curtis testified that the bid advertisement dates were December 8, 1995, and December 15, 1995, which meant that the wage determinations for August 22, 1995, were in effect. She testified that all of appellant's laborers were being paid the entry-level wage rate although, under the wage determination, there should be a certain number of journeyman laborers when entry-level laborers were employed. She further testified that the payroll records showed appellant's journeyman employees were being paid at the lather and drywaller rate rather than the plasterer rate. She believed appellant's journeyman employees were properly classified as plasterers because, according to a subcontractor list prepared by the contractor, appellant had contracted to perform plastering and a different subcontract was contracted to perform drywall work. Curtis further testified that the journeyman employees were shown as working on Saturday without overtime compensation, although there was no inclement weather clause in effect for plasterers or laborers.[1]

Curtis explained that the notice to withhold was filed as a result of an audit conducted by the labor compliance unit of the equal opportunity section for LAUSD. She believed that the review was initiated because

---

[1]As we will see, an inclement weather clause permits Saturday work at straight time whenever inclement weather prevented work during the week. Curtis testified there was an inclement weather clause in effect for lathers.

Tang-Wong noticed some inconsistencies while engaged in a routine review of appellant's certified payroll records. Curtis put into evidence the audit and the certified payroll records on which it was based. She understood that former labor compliance coordinator Frazier had placed calls to appellant and had discussions with him about the inconsistencies noted by Tang-Wong.[2] Frazier reportedly was told by appellant that the journeyman employees shown on the payroll were plasterers. Frazier reportedly advised appellant that the lack of journeyman laborers was a problem.

Curtis was asked by appellant's counsel why he was charged the highest possible penalty of $50 per day. She responded: "Because generally the Labor Commissioner doesn't give us that kind of leeway. [¶] . . . [¶] . . . If it's going to be less, then we have to submit additional documentation to prove that it was a mistake or that it was inadvertent. And in this particular case, I didn't think that it would be applicable because my predecessor contacted [appellant] a couple of times to let him know that in the certified payroll records there were possible [violations]." She further testified that to her knowledge, no one had received a lesser penalty on the sliding scale.

Tang-Wong testified that when she reviewed appellant's certified payroll records, she noticed that "journeyman" was listed but not what category. She brought it to Frazier's attention. Later, Frazier told her that he had spoken to appellant and was told that they were plasterers. Frazier also told Tang-Wong that he had tried to discuss the journeyman/laborer ratio with appellant, but that he did not get to finish the conversation.

Appellant denied telling Frazier that his journeyman employees were plasterers. He testified that most of his people were multitrade and were likely to be doing different things on different days or at different times during the day. He believed that the journeyman workers he employed for other categories satisfied the wage determination requirement for a certain number of journeyman employees for every laborer. He testified that he followed the wage determinations for August 1996 received in conjunction with the February 1997 letter from Vuksich.

*Wage Determinations*

The wage determination for laborers issued August 25, 1995, put into evidence at the hearing, provides: "Saturdays in the same work week may be worked at straight-time if job is shut down during work week due to inclement weather." It further provides: "The ratio of trainees will be one trainee for one journeyman laborer up to four journeymen laborer and one

---

[2]Frazier did not appear or testify.

trainee for every four journeymen laborer thereafter." The wage determination for drywall installer/lather issued August 22, 1995, provides: "Saturdays in the same work week may be worked at straight-time if job is shut down during the normal work week due to inclement weather." Both wage determinations state that they are set to expire June 30, 1996. The date is followed by a double asterisk, and the wage determinations go on to say: "The rate to be paid for work performed after this date has been determined. If work will extend past this date, the new rate must be paid and should be incorporated in contracts entered into now."

The wage determination for laborer issued August 22, 1996, has an expiration date of June 30, 1997, followed by a single asterisk. It states that it is "effective until superseded by a new determination issued by the director of industrial relations." The August 1996 wage determinations for laborer and drywall installer/lather also reflect an increase in the hourly wage. Otherwise the wage determinations issued in August 1996 are essentially the same as the ones issued in August 1995, including the ratio requirement for entry-level laborers versus journeyman laborers.

We can find no separate wage determination for plasterers in the record which has been provided to us. The only document referencing plasterers appears to be a summary of all wage determinations for the 1995 to 1997 period and shows the salary payable to plasterers and various other crafts but nothing more. The hourly rate shown for plasterers is about $1.30 more than the rate for drywall installers/lathers shown on the wage determinations.

*Findings of Hearing Officer*

The hearing officer issued a written decision and order making the following findings: On December 8, 1995, and again on December 15, 1995, LAUSD advertised the Queen Anne Place School project for bid. Appellant entered into a contract "to perform plaster work on such project." LAUSD conducted an investigation, obtaining certified payroll records from appellant's company. The records identified two classifications of employees— laborer and journeyman—and the hourly wages indicated that the journeyman employees had been classified as lathers and that the laborers were entry level. Tang-Wong performed an audit using wage determinations issued in August 1995 based on reclassifying the journeyman workers as journeyman plasterers and the entry-level workers as journeyman laborers. "The Journeyman Plaster[er] was determined to be appropriate based on the scope of work [appellant] contracted for and the fact that another contractor had contracted for the Lathing work. The classification of Journeyman Labor[er] was used in that the wage determination requires that there be a

specific ratio of entry level Laborers to Journeyman. The certified payroll records did not set forth any Journeyman Laborers. Accordingly, Ms. Tang-Wong determined the entry level Laborer classification had been used incorrectly."

The hearing officer considered and rejected appellant's arguments: (1) that the wage determinations issued in 1996 rather than the ones issued in August 1995 should have been used to calculate proper wage levels and that under the 1996 wage determinations, work could be performed on Saturdays without payment of overtime if necessitated by bad weather; (2) that the journeyman employees were lathers not plasterers; and (3) that the presence of journeymen of any trade could meet the requirement for a certain ratio of journeymen to entry-level laborers. The hearing officer concluded that "reasonable cause exists for the withholding or retaining of the sum set forth in the Notice toWithhold."

### Original Petition and Complaint

A notice of the findings and the decision and order thereon was served on appellant on October 27, 1999. On January 6, 2000, appellant, acting in propria persona, filed a pleading which he entitled "Petition for Administrative Mandamus (CCP Section 1094.5), Attorney Fees, and Damages (CCP Section 1095); Complaint for Declaratory Relief, Damages, Attorney Fees (42 USCS Section 1983)." The named defendants were LAUSD, DLSE, Kirk Rascoe, Curtis, Tang-Wong, Frazier, and Macey. As we have seen, Curtis, Tang-Wong and Frazier were LAUSD employees involved in the investigation of the wage violation,[3] and Macey was the hearing officer. Rascoe was alleged to be the director of the equal opportunity section in which the LAUSD employees worked.

Appellant claimed to be seeking relief under title 8 of the California Code of Regulations, the Administrative Procedure Act, and 42 United States Code section 1983 (hereafter section 1983). He alleged that he paid laborers based on the wage designation received in 1997, which he believed was correct, and that inclement weather caused the Saturday work. He further alleged that his workers performed both lath and plaster work and that the journeyman laborer to entry labor ratio was misapplied. He accused the individual defendants of testifying falsely or withholding information at the hearing. In the prayer, appellant asked the court to set aside the decision of the hearing officer and independently evaluate the evidence or order a "new trial." He also asked for attorney fees and for compensatory and punitive damages.

---

[3]These individuals together with LAUSD are referred to herein as "the LAUSD respondents."

Respondent LAUSD demurred to the petition contending that: the writ was barred by the 60-day statute of limitations derived from Government Code sections 11521 and 11523; LAUSD could not be held liable for the torts of its employees under section 1983; a section 1983 claim could not be based on negligence; and the pleading was uncertain, ambiguous, and unintelligible. The demurrer also made the point that LAUSD was not a proper subject of a writ because it did not conduct the administrative hearing. In a separate motion, LAUSD moved to strike appellant's request for punitive damages on a section 1983 claim under the holding in *Newport v. Fact Concerts, Inc.* (1981) 453 U.S. 247 [101 S.Ct. 2748, 69 L.Ed.2d 616].[4] The LAUSD employees demurred separately, asserting essentially the same grounds, and further asserting that they were entitled to absolute immunity from any claim based on their testimony as witnesses in a judicial or quasi-judicial proceeding.

DLSE and Macey demurred on the ground that the petition was untimely; that it sought section 1983 damages without alleging a violation of official policy or custom; that Macey was immune from suit as a quasi-judicial officer; and that the pleading was vague, uncertain, and ambiguous.

The court ruled that the demurrers and motion to strike (as well as a motion to transfer filed by appellant) were moot because, while they were pending, appellant submitted a first amended complaint. The court instructed appellant to file and serve a second amended complaint specifying the causes of action, stating which cause of action was alleged against which party, and otherwise complying with the procedural rules.

*Second Amended Complaint and Writ Petition*

Appellant filed a second amended complaint. The first cause of action for relief under section 1983 against all respondents alleged that a violation of appellant's constitutional rights occurred on June 10, 1998, when Frazier and Rascoe signed the notice of withholding without prior hearing. It further alleged that the individual respondents "ignore[d] printed determinations" and "immediately charge[d] wage violations at the highest penalties and with erroneous assumptions."

Appellant filed a separate pleading for administrative mandamus, which also included claims for "breach of duty," "malicious interference of economic capacity," "negligent interference," "prejudicial abuse of discretion,"

---

[4] In *Newport*, the court held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." (*Newport v. Fact Concerts, Inc., supra,* 453 U.S. at p. 271 [101 S.Ct. at p. 2762].)

"constitutional misconduct," "intentional interference," and "negligence." In support of the mandamus request, appellant alleged that respondents wrongfully decided that reasonable cause existed to withhold funds from appellant, failed to grant him a fair trial and meaningful opportunity to be heard, and deprived him of an opportunity to rebut the evidence offered by LAUSD's witnesses. Appellant further alleged that respondents failed to provide adequate notice of charges or provide sufficient information prior to the hearing to allow appellant to present his defense, citing Government Code section 11503.

*Motion to Strike and Demurrers*

The LAUSD respondents moved to strike on the ground that the court had not given permission to file two separate pleadings. These respondents also demurred, raising all of the grounds previously argued. In addition, respondents contended that the section 1983 claim was barred by the applicable one-year statute of limitations; that the LAUSD employees had absolute immunity from claims derived from their participation in the administrative hearing; that appellant was wrongly attempting to base claims on settlement documents; that appellant failed to submit a claim under the California Tort Claims Act prior to filing the lawsuit; that appellant failed to identify any duty breached; and that appellant's claims were otherwise not based on any cognizable legal theory.

DLSE and Macey demurred on the grounds that the 60-day statute of limitations in Government Code sections 11521 and 11523 precluded consideration of the writ; the failure to file a claim under the California Tort Claims Act precluded recovery; Macey was entitled to immunity in her role as a quasi-judicial officer; and the pleading was vague, ambiguous, and uncertain.

The trial court sustained the demurrers without leave to amend on the ground that appellant's claims were time-barred by a one-year statute of limitations for section 1983 claims and a 60-day statute of limitations to seek judicial review of administrative decisions. The court further ruled that the individual defendants were immune from personal liability.

Appellant moved for reconsideration under Code of Civil Procedure section 1008. The court denied the motion. This appeal followed.

DISCUSSION

I

Before we can reach the issues raised in the briefs concerning the trial court's ruling, we must discuss *Lujan v. G & G Fire Sprinklers, Inc.* (2001)

532 U.S. 189 [121 S.Ct. 1446, 149 L.Ed.2d 391], a United States Supreme Court opinion filed while this appeal was pending, after briefing had concluded.[5] The Supreme Court "tentative[ly]" upheld the validity of the statutory scheme governing prevailing wage disputes, subject to its understanding as to how certain issues would be resolved by California courts in the future. (*Id.* at p. 198 [121 S.Ct. at p. 1452].) To understand the impact of the holding on the present case, we start with a discussion of the Ninth Circuit Court of Appeals decisions which preceded it.

The original Ninth Circuit decision, and the apparent impetus for the promulgation of the emergency regulations under which the administrative hearing here was held, was *G & G Fire Sprinklers, Inc. v. Bradshaw* (9th Cir. 1998) 156 F.3d 893, judgment vacated and cause remanded for reconsideration in *Bradshaw v. G & G Fire Sprinklers* (1999) 526 U.S. 1061 [119 S.Ct. 1450, 143 L.Ed.2d 538]. In *G & G Fire Sprinklers*, the court held that the state's long-standing practice of withholding payments and penalties from amounts owed to subcontractors for alleged prevailing wage violations without notice or hearing constituted deprivation of a protectible property interest without due process of law. (156 F.3d at p. 904.)

In declaring the procedure violative of due process, the Ninth Circuit gave its understanding of the procedures being followed by state agencies at the time, which we quote at length because it accurately summarizes the procedures in effect when the notice to withhold sums from amounts payable to appellant was issued: "The California Labor Code requires contractors and subcontractors on public works projects to pay a state-determined prevailing wage to all their workers. Cal. Lab. Code § 1771. To enforce this requirement, the body awarding the contract ('the awarding body') is allowed to withhold funds from a prime contractor should it determine that the contractor or one of its subcontractors has violated the prevailing wage law. § 1727. The state is authorized to withhold an amount equal to the total amount that all the workers have been underpaid, as well as up to $50 per day, per worker in fines for each instance in which the contractor fails to pay the prevailing wage. § 1775. A withholding order can only be issued after a full investigation by DLSE or the awarding body, unless the withholding is from the final payment to be made to the prime contractor. § 1727. If the violator is a subcontractor, the prime contractor is authorized to withhold an equivalent amount from its payments to the subcontractor. § 1729. All of these provisions must be incorporated into all public works contracts. Cal. Admin. Code, Title 8, § 16430.

"A notice to withhold to an awarding body is a standard procedure utilized by DLSE, but no notice or hearing is required prior to its issuance. DLSE is

not required to produce any evidence of a violation of the law, no specific standard is applied in determining whether to issue a notice to withhold, and no procedure exists to guard against the issuance of improper or excessive notices to withhold[] [although] . . . as a general rule, information from a witness/informant must be verified with an independent source[] [and] recommendations to withhold must be reviewed by a supervisor." (*G & G Fire Sprinklers, Inc. v. Bradshaw, supra,* 156 F.3d at p. 898.)

The court went on to explain its understanding of the remedies available to recover withheld funds: "The exclusive remedy after withholding is a lawsuit by the prime contractor against the awarding body for recovery of the money withheld. §§ 1730-33. Such a suit must be filed within 90 days of the withholding, and the contractor bears the burden of establishing that there was no violation. § 1733. DLSE may defend the lawsuit upon request by the awarding body. *Id.* Subcontractors are not given the right to bring suit, although a prime contractor is allowed to assign its right to sue. *Id.* If a suit is not brought within 90 days, the state disburses the withheld funds to the underpaid workers; if a suit is brought within this period, then the money is held in escrow until its resolution. § 1731." (*G & G Fire Sprinklers, Inc. v. Bradshaw, supra,* 156 F.3d at p. 898.)

Based on this understanding, the court concluded: "[S]ubcontractors . . . are afforded neither a pre- nor post-deprivation hearing when payments are withheld. Once the state determines that a violation of the prevailing wage law has occurred, it may withhold and disburse money directly to the workers and may impose fines both without providing any hearing at which the subcontractor might challenge the validity of the state's finding. Accordingly, subcontractors have no opportunity to be heard at a meaningful time in a meaningful manner. [Citation.] This scheme violates the Due Process Clause of the Fourteenth Amendment." (*G & G Fire Sprinklers, Inc. v. Bradshaw, supra,* 156 F.3d at p. 904, fn. omitted.) The court rejected the state's argument that due process was satisfied because an aggrieved party could bring a suit against the contractor on the contract, on the ground that it "doubt[ed] the viability of a subcontractor's hypothetical suit against a prime contractor based on theories of breach of the covenant of good faith and fair dealing or equitable subrogation. The state and amici curiae have been unable to cite a single California case utilizing either theory in this context. The prime contractor could easily defeat any breach of covenant suit by demonstrating that its withholding of payment was authorized by law. *See* § 1729.[6] And the facts of this case clearly do not meet the traditional elements of equitable subrogation. [Citations.]" (156 F.3d at p. 904, fn. 9.)

---

[6]Labor Code section 1729 provides in part: "It shall be lawful for any contractor to withhold from any subcontractor under him sufficient sums to cover any penalties withheld

The United States Supreme Court vacated and remanded the Ninth Circuit's decision for reconsideration in light of its decision in *American Mfrs. Mut. Ins. Co. v. Sullivan* (1999) 526 U.S. 40 [119 S.Ct. 977, 143 L.Ed.2d 130], a case in which the court upheld a Pennsylvania law that required employers to pay for all reasonable and necessary medical treatment for work-related injuries, but permitted the insurer to withhold payment if it disputed its reasonableness or necessity. The Ninth Circuit did as instructed, but continued to adhere to the view that the subcontractors' due process rights were violated "because the California statutory scheme afforded no hearing at all when state officials directed that payments be withheld." (*G & G Fire Sprinklers, Inc. v. Bradshaw* (9th Cir. 2000) 204 F.3d 941, 943-944, fn. omitted.) The court also continued to believe that the withholding represented state action: "The withholding in *Sullivan* was carried out by a private insurer exercising its discretion in a way permitted by State law. The withholding here was specifically directed by State officials in an environment where the withholding party has no discretion at all." (*Id.* at p. 944.)

That second decision was reversed on April 17, 2001, by the Supreme Court in *Lujan*. Essentially, the Supreme Court reversed because it disagreed with the Ninth Circuit's understanding of California law. "Because we believe that California law affords respondent sufficient opportunity to pursue [the claim for payments due under the contract] in state court, . . . the California statutory scheme does not deprive [the subcontractor] of its claim for payment without due process of law. [Citation.]" (*Lujan v. G & G Fire Sprinklers, Inc., supra,* 532 U.S. at p. 195 [121 S.Ct. at pp. 1450-1451].)

The court specifically considered the impact of sections 1731 and 1732 of the Labor Code which provide that "the contractor and his or her assignees" may sue the awarding body "on the contract for alleged breach thereof" for the recovery of wages or penalties, and that suit on the contract against the awarding body is the "exclusive remedy of the contractor or his or her assignees" with respect to the recovery of withheld wages and penalties. (Lab. Code, §§ 1731, 1732.) As we have seen, the Ninth Circuit had concluded: "The exclusive remedy after withholding is a lawsuit by the prime contractor against the awarding body for recovery of the money withheld. . . . Subcontractors are not given the right to bring suit, although a prime contractor is allowed to assign its right to sue." (*G & G Fire Sprinklers, Inc. v. Bradshaw, supra,* 156 F.3d at p. 898.) The Supreme Court expressed concern about what might happen if the subcontractor could not obtain assignment of the right to sue the awarding body under the contract, but ultimately concluded that in that situation, "subcontractors . . . may

from him by the awarding body on account of the subcontractor's failure to comply with the terms of this chapter . . . ."

pursue their claims for payment by bringing a standard breach-of-contract suit against the contractor under California law." (*Lujan v. G & G Fire Sprinklers, Inc., supra,* 532 U.S. at p. 198 [121 S.Ct. at p. 1452].) Although that view was "necessarily tentative, since the final determination of the question rests in the hands of the California courts," the subcontractor having failed to "convince[] [the court] that this avenue of relief is closed to it" failed to meet its burden to prove that the statutory withholding scheme was unconstitutional. (*Ibid.*)

To support its "tentative" view that California law permitted the subcontractor to pursue a claim directly, the Supreme Court cited *J & K Painting Co. v. Bradshaw* (1996) 45 Cal.App.4th 1394 [53 Cal.Rptr.2d 496]. In *J & K Painting,* a painting subcontractor, PaintCo, instituted an action to challenge the practice of imposing penalties for prevailing wage violations at the maximum statutory rate and sending a notice to withhold to the prime contractor including that amount prior to conducting a thorough investigation. In the action, PaintCo sought a writ of mandamus, " 'ordering [the Commissioner of Labor] to exercise her discretion as required by statute and initiate a full investigation into the alleged prevailing wage violations of Petitioner, and all others similarly situated, and make a determination before imposing any penalties under Labor Code § 1775,' . . . " (45 Cal.App.4th at p. 1398.) Although the opinion does not specifically so state, discussion of section 1086 of the Code of Civil Procedure within the text indicates that the petition for writ was brought under Code of Civil Procedure section 1085, the provision governing traditional mandamus. (See *J & K Painting Co.,* at pp. 1399, 1400.)

The commissioner contended that PaintCo lacked standing since the funds were withheld from the general contractor and that mandamus was inappropriate because PaintCo had one or more plain, speedy, and adequate remedies at law, including "(1) a statutory suit, under an assignment from the general contractor, for the recovery of penalties from the awarding body; (2) recordation of a stop notice against the project for nonpayment under the subcontract; and (3) suit against the general contractor under the subcontract." (*J & K Painting Co. v. Bradshaw, supra,* 45 Cal.App.4th at p. 1400.)

The court considered and rejected these procedural defenses.[7] Because the general contractor withheld funds from PaintCo "as section 1729 expressly empowered it to do," PaintCo was "directly aggrieved by the withholding, and possesses a direct interest in a determination of its lawfulness." (*J & K*

---

[7]Ultimately, the court sided with the commissioner on the substantive question of whether discretion had been exercised. (*J & K Painting Co. v. Bradshaw, supra,* 45 Cal.App.4th at pp. 1407-1408.)

*Painting Co. v. Bradshaw, supra,* 45 Cal.App.4th at p. 1399.) Further, none of the proceedings mentioned by the commissioner as adequate substitute for a writ proceeding "would afford the relief sought . . . by PaintCo, i.e., a determination that the practice regularly employed by the Commissioner to collect penalties is unlawful, and a writ commanding that it cease." (*Id.* at p. 1400.) "A statutory suit against the awarding body would be 'limited to the *recovery* of the wages and penalties,' and would permit '[n]o other issues' to be 'presented to the court.' (§ 1733.) The statutory stop-notice procedure is at least equally limited, and (indulging the doubtful assumption that it might otherwise be applicable) could well become time-barred before an aggrieved subcontractor even learned funds were being withheld.[8] A suit against the contractor on the subcontract cannot afford any relief against the awarding body or the Commissioner, and would typically be subject to arguably preclusive defenses based either on customary contract clauses or on the provisions of the prevailing wage law itself.[9]" (*J & K Painting Co.,* at p. 1400, fns. omitted.)

The commissioner further argued that PaintCo's writ petition was pre-cluded because "section 1732 explicitly provides the *exclusive* remedy for one in [the subcontractor's] position." (*J & K Painting Co. v. Bradshaw, supra,* 45 Cal.App.4th at p. 1401.) As the Supreme Court recognized in *Lujan,* the court did not agree with that assessment: "PaintCo falls within the statute only if it was an assignee of [the general contractor's] claims for the withheld funds. The statute perhaps should, but does not, declare that a subcontractor becomes an assignee of the contractor's rights by operation of law where, as here, the contractor passes retained penalties to the subcon-tractor by in-turn withholding. The Commissioner therefore fails to establish that [the subcontractor] can or should be viewed as an 'assignee' of [the general contractor's] statutory right of action." (*J & K Painting Co.,* at p. 1401, fns. omitted.) Noting that "[t]he real gist of the Commissioner's argument appears to be that the statute impliedly *required* a subcontractor in PaintCo's position to *obtain* an assignment from the contractor, and that failure to do so was fatal to any other attempt to secure relief," the court went on to state: "No such requirement is *expressly* imposed, and a Legis-lative intent to create remedial exclusivity will not be inferred where the remedy in question is 'patently inadequate.' [Citation.] A remedy which

[8]In this regard, the court noted that a stop notice must be filed within 30 days after recordation of a notice of completion. (See Civ. Code, § 3184, subd. (a).)

[9]In this regard, the court noted that numerous contracts contain a "pay when paid" clause under which the subcontractor's entitlement to payment is conditioned on the contractor's own receipt of funds from the owner, or that the contractor could take the position that the subcontractor waived its right to collect the sums withheld by failing to proceed against the involved public agency. (*J & K Painting Co. v. Bradshaw, supra,* 45 Cal.App.4th at pp. 1400-1401, fn. 4.)

depends for its very existence on the will or whim of another certainly appears 'patently inadequate.' " (45 Cal.App.4th at p. 1407, fn. 7.)

## II

As we understand the Supreme Court's decision in *Lujan*, the withholding of construction funds due to a suspected prevailing wage law violation prior to any type of hearing and in the absence of a prompt postdeprivation hearing does not give rise to a due process violation as long as some postdeprivation avenue of relief is available to permit the subcontractor to reclaim the sums withheld. According to the Supreme Court, it is up to California courts to ensure some avenue of relief is open. The court indicated that the availability of a standard breach of contract suit against the contractor would suffice. In addition, it cited with approval the decision in *J & K Painting* in which the court held that a petition for ordinary writ under Code of Civil Procedure section 1085 could be maintained directly against the state agency under certain circumstances.

For the reasons discussed in *G & G Fire Sprinklers* and *J & K Painting*, we see serious limitations with the breach of contract avenue. There are numerous unresolved legal issues that could prelude recovery on a suit for breach of contract by the subcontractor against the contractor. For example, the contractor might raise a defense under a "pay when paid" provision. One appellate court has held that pay when paid clauses are invalid (*Capitol Steel Fabricators, Inc. v. Mega Construction Co.* (1997) 58 Cal.App.4th 1049 [68 Cal.Rptr.2d 672]), but in doing so it recognized that existing Supreme Court authority does not resolve the issue. (*Id.* at pp. 1060-1062; see *Wm. R. Clarke Corp. v. Safeco Ins. Co.* (1997) 15 Cal.4th 882 [64 Cal.Rptr.2d 578, 938 P.2d 372] [invalidating a pay when paid clause in a suit against a surety in a suit under a payment bond and a private works contract].) The statement in Labor Code section 1729 that withholding sums from the subcontractor to cover penalties "shall be lawful" could be raised as a defense. A contractor might also raise a waiver or estoppel defense if a breach of contract suit were to be filed within four years (the contractual statute of limitations), but too late for the contractor to recover from the agency under other provisions. On a more pragmatic note, a dispute between a state agency and a subcontractor concerning payment of prevailing wages cannot be efficiently resolved by a breach of contract suit against the contractor. Generally, the contractor acts as a conduit in withholding payments. It does not conduct the investigation or determine the appropriate penalty and, therefore, would have very little knowledge of the pertinent facts. As a nonparty to the litigation, the agency would not be subject to ordinary discovery, and essential documents and witnesses' testimony would have to be obtained through the cumbersome process of subpoena.

Legislation enacted last year may have rendered these issues moot for future litigants. The amendments to the relevant statutory provisions added new sections 1741 (added by Stats. 2000, ch. 954, § 9) and 1742 of the Labor Code, effective July 1, 2001 (added by Stats. 2000, ch. 954, § 10), which clarify that an administrative hearing on the merits must be afforded both contractors and subcontractors in appellant's position. Under new section 1741, if the Labor Commissioner determines "after an investigation" that there has been a prevailing wage violation, the commissioner is to "issue a civil wage and penalty assessment to the contractor or subcontractor or both." The assessment "shall advise the contractor *and subcontractor* of the procedure for obtaining review of the assessment." (*Ibid.*, italics added.) Under new section 1742, the "affected contractor *or subcontractor*" can obtain review of the assessment by written request to the Commissioner "within 60 days after service of the assessment . . . ." (*Id.*, subd. (a), italics added.) The subject of the hearing will be whether "the basis for the civil wage and penalty assessment is incorrect" with the contractor or subcontractor having the burden of proof on that issue. (*Id.*, subd. (b).) Within 45 days after the hearing, "the director shall issue a written decision affirming, modifying, or dismissing the assessment." (*Ibid.*) Thereafter, the affected contractor or subcontractor "may obtain review of the decision of the administrative law judge by filing a petition for a writ of mandate to the appropriate superior court pursuant to Section 1094.5 of the Code of Civil Procedure within 45 days after service of the decision." (Lab. Code, § 1742, subd. (c).)

With these recent developments in mind, we turn to the issues raised by the trial court's order.

### III

### A*

. . . . . . . . . . . . . . . . . . . . . . . . .

### B

■    Insofar as the individual respondents are concerned, the section 1983 claims completely lack merit. Appellant attempted to assert a section 1983 claim against the individual defendants based on their allegedly inadequate investigation of the facts and the positions they took during the administrative hearing concerning the proper interpretation of the laws regulating prevailing wage payments. The cause of action under section 1983 contained

---

*See footnote, *ante*, page 1221.

the following allegations: "Curtis testified to her thorough review of [appellant's] contract and scope of work as well as providing the correct wage determination"; "Tang-Wong testified to her calculations and investigations which in themselves were erroneous and factually inaccurate"; "[Rascoe] signed the document that initiated the taking as well as acknowledge[d] on that document that he had investigated the facts."[10]

As respondents rightly point out, persons involved as judicial officers or witnesses in judicial or quasi-judicial hearings are entitled to immunity from civil rights suits (*Pierson v. Ray* (1967) 386 U.S. 547 [87 S.Ct. 1213, 18 L.Ed.2d 288]; *Briscoe v. LaHue* (1983) 460 U.S. 325, 335 [103 S.Ct. 1108, 1115-1116, 75 L.Ed.2d 96] [holding that even a witness who commits perjury is entitled to immunity]), and negligent acts cannot give rise to a section 1983 claim (*Daniels v. Williams* (1986) 474 U.S. 327, 331 [106 S.Ct. 662, 664-665, 88 L.Ed.2d 662]). More fundamentally, the allegations contained in appellant's pleadings do not come close to the level needed to constitute a serious section 1983 claim. The individual respondents were not violating appellant's civil rights by taking the position that his journeyman workers were plasterers and deserving of a higher wage any more than appellant was violating his workers' civil rights by taking the opposite position. All the allegations prove is that the parties disagreed about how to apply relevant law to known facts. If honest disputes about legal and factual matters were all it took to support a section 1983 claim, we would be awash in them.

Appellant's attempts to assert other types of claims against the individual respondents also lack merit.[11] To be valid, a pleading must contain factual allegations supporting the existence of all the essential elements of a known cause of action. Plaintiffs cannot simply cite a few facts and then invent causes of action to cover them. "Reckless disregard of property rights,"

---

[10]The allegations of the original pleading were similar. Concerning Curtis, the pleading alleged that she "introduced evidence at the hearing that was known or should have been known to be false in content and characterization" by "testif[ying] under oath that [appellant] was hired to perform 'plaster' work" and stating that "she had conducted an investigation into the alleged prevailing wage violations"; "intentionally withheld information concerning the appropriate prevailing wage rate determination"; and was "intentionally negligent in reviewing the actual wages paid to workers employed by [appellant]." Concerning Tang-Wong, she allegedly "demonstrated an intentional neglect of duty and lack of thoroughness and knowledge of the laws and regulations governing payment of prevailing wages by ignoring that the wage determinations she used against [appellant] had in fact expired." Frazier "blatantly and prejudicially withheld information in the initial stages of the prevailing wage alleged violations." Rascoe "refused to independently investigate . . . allegations from [appellant] and in fact defended the actions of his personnel and expressed that no wrongdoings had occurred."

[11]In a cause of action for "reckless disregard of property rights," appellant cites as proof of intentional misconduct the filing of an LAUSD settlement conference statement in which it was stated that appellant served as a lath and plaster subcontractor. In claims for misrepre-

"constitutional misconduct," "malicious misconduct," "malicious interference of economic capacity," and "breach of duty" are not recognized causes of action under California law. Misrepresentation is a valid type of claim, of course. However, essential elements of a misrepresentation claim are clearly missing under the facts set forth by appellant. Statements made at an administrative hearing that facts have been investigated and wage laws have been violated do not constitute actionable misconduct under any theory. Appellant's attempt to involve the individual respondents in his lawsuit serves no conceivable purpose, and muddies the real issues he raises concerning the proper interpretation of the prevailing wage laws.

## C

Insofar as DLSE was concerned, the demurrer should not have been sustained on statute of limitations grounds. The source of appellant's complaint against DLSE was related to the October 14, 1999, hearing. He denied he was given a fair hearing or meaningful opportunity to be heard. Referring to section 16410 et seq., of title 8 of the California Code of Regulations, respondents contend that "specific statutory regulations were established to ensure that [appellant] would be afforded his administrative hearing" and that the October 14 hearing "ensured that [appellant's] due process rights were protected when the [Department of Industrial Relations] and DLSE conducted a hearing to determine the reasonableness of [LAUSD's] withholding, as was required by G & G Sprinklers." Appellant disagrees, stating

---

sentation and "malicious misconduct," appellant alleged that LAUSD and its employees intentionally misrepresented the nature of appellant's work as plastering rather than lath work. A fourth cause of action for "interference of economic capacity" against all respondents alluded to the possibility that appellant would be unable to bid on public work contracts due to the allegedly false allegations. A fifth cause of action for "breach of duty" alleged that "Defendant's duty was to faithfully and fairly administer the payment of prevailing wages, not institute a punishment program against a subcontractor for alleged payment violations not supportable by the evidence used by the Defendants. The duty is to the legislature to accurately carry out the mandate of its laws. These defendants breached these laws to the detriment of [appellant]." A cause of action for "malicious interference of economic activity" alleged that respondents DLSE and Macey "unlawfully" determined that the funds withheld for the wage violations were properly withheld, knowing that "a prevailing wage violation can destroy a business and render its ability to perform public work impossible."

A separate cause of action for negligent and intentional interference alleged that respondent DLSE and Macey did not provide a fair hearing in accordance with the regulations because of the use of "expired wage determination[s]" and "erroneous assumptions as to the scope and nature of work [appellant] performed on Queen Anne Place Elementary School." A cause of action for negligence and "breach of duty" alleged that respondents DLSE and Macey failed to follow regulatory guidelines for the conduct of a hearing by failing to provide "a concise statement and presentation of allegations with supporting facts to allow [appellant] a reasonable opportunity to defend himself." A cause of action for constitutional misconduct alleged that DLSE and Macey deprived appellant of a fair hearing because they did not "correct the procedural errors of LAUSD in its withhold of alleged prevailing wage payment funds."

in his brief that respondents did not provide "a prompt post-deprivation hearing to determine the *true owner* of the funds that were withheld . . . ."

As we have seen, the Ninth Circuit held in *G & G Fire Sprinklers* that due process required a prompt postdeprivation hearing addressing whether a prevailing wage violation had occurred to support the withholding of funds. As we have also seen, the United States Supreme Court overturned the holding in *G & G Fire Sprinklers* but did so with the proviso that some authentic avenue for recovery of the funds must be made available to affected subcontractors under California law. Finally, we have seen that the Legislature now mandates a hearing on the issue of whether the basis asserted for the wage and penalty assessment is correct or incorrect.

■ The hearing provided by the emergency regulations is wholly inadequate and does not comply with either the courts' rulings or the statute. Section 16414 of title 8 of the California Code of Regulations provides: "The hearing pursuant to this section shall *only determine* whether *reasonable cause* exists for the withholding, retention, or forfeiture of funds pursuant to Labor Code § 1727. *A hearing pursuant to this section shall not be deemed to be dispositive as to the contractor's (or affected subcontractor's) compliance with prevailing wage laws.* Any decision rendered shall have *no res judicata or collateral estoppel effect*, and will not preclude the Labor Commissioner from pursuing any action provided by Labor Code § 1775 or any other statutory or common law remedy against any party. *Neither the failure of a party to request a hearing nor the Labor Commissioner's decision after a hearing shall preclude the contractor or affected subcontractor from pursuing any other remedy provided by existing law.*" (Cal. Code Regs., tit. 8, § 16414, subd. (e), italics added.) In other words, instead of a trial-like administrative proceeding to resolve the issue of whether the prevailing wage laws had in fact been violated, the regulations offer a preliminary hearing. They leave to some other forum—the forum in which the parties are pursuing an unidentified and possibly nonexistent "remedy provided by existing law"—the chore of deciding whether a violation did or did not actually occur.

Nor did the hearing officer purport to resolve whether or not appellant had violated the prevailing wage laws. As she stated on the record, her job was "not to reach a final determination as to whether or not prevailing wages were properly paid, but rather whether or not there [was] reasonable cause to withhold sums set forth on a Notice to Withhold pending a final determination." Indeed, it would have been impossible for her to resolve the issue on the evidence presented. The only witnesses on behalf of LAUSD were persons who had reviewed payroll records and calculated wage deficiencies

based on factual investigations conducted by others. No one who had investigated the nature of the work being performed by appellant's employees was present to testify. The wage determination which would have specified whether or not the inclement weather clause applied to plasterers was not put into evidence. The laborer wage determinations put into the record indicated that they were subject to an inclement weather clause, contrary to the testimony of Curtis. According to a list prepared by the contractor, appellant was performing plaster work only, but this was contradicted by his subcontract which stated he was engaged to perform "lath and plaster" work. On this record, the hearing officer had no basis for deciding whether appellant violated the law (1) in concluding that at least some of his journeyman workers were lathers rather than plasterers, (2) in paying straight time for Saturday work after inclement weather had prevented construction during the week, or (3) in believing the journeyman employees working for him satisfied the requirement of employing a requisite number of journeyman laborers for every entry-level laborer. By the same token, there was also inadequate evidence to support the decision to impose the $50-per-day penalty for knowing violations. Neither Curtis nor Tang-Wong had personal knowledge about any information imparted to appellant, and their recitation of Frazier's reported conversations with appellant lacked sufficient detail for a determination of whether Frazier had adequately informed appellant about his obligations. On this record, we do not see how it can be said that appellant has had the hearing to which he is entitled addressing whether a prevailing wage violation occurred.

## IV

Appellant asserted in his pleadings a request for a writ of mandate. Respondents contended, and persuaded the trial court, that the writ petition portion of the pleading was governed by the statute of limitations contained in Government Code sections 11521 and 11523. Section 11521, subdivision (a), provides: "The agency itself may order a reconsideration of all or part of the case on its own motion or on petition of any party. The power to order a reconsideration shall expire 30 days after the delivery or mailing of a decision to respondent, or on the date set by the agency itself as the effective date of the decision if that date occurs prior to the expiration of the 30-day period or at the termination of a stay of not to exceed 30 days which the agency may grant for the purpose of filing an application for reconsideration." Section 11523 provides in relevant part: "Judicial review may be had by filing a petition for a writ of mandate in accordance with the provisions of the Code of Civil Procedure, subject, however, to the statutes relating to the particular agency. Except as otherwise provided in this section, the petition

shall be filed within 30 days after the last day on which reconsideration can be ordered."

Appellant concedes his petition was not filed within 60 or 65 days of service of notice of the hearing officer's decision, but contends that it was filed within the 90 days within which Labor Code section 1732 permits a petition for writ to be filed. Section 1732 provides: "Notwithstanding any other provision of law, the time for action by the contractor or his or her assignee for the recovery of wages or penalties is limited to the 90-day period and suit on the contract for alleged breach thereof in not making the payment is the exclusive remedy of the contractor or his or her assignees with reference to those wages or penalties." The "90-day period" is discussed in Labor Code sections 1730 and 1731 and refers to the period "90 days after the completion of the contract and formal acceptance of the job." (Lab. Code, § 1730.) During that period, the awarding body is to "transfer all wages and penalties that have been withheld pursuant to Section 1727 to the Labor Commissioner, for disbursement" unless "suit is brought against the awarding body within the 90-day period and formal notice thereof is given to the awarding body within the 90-day period . . . ." (*Id.*, §§ 1730, 1731.)

We find fault with both analyses. Government Code sections 11521 and 11523 are contained in a chapter, which by its terms applies only to administrative proceedings "conducted by administrative law judges on the staff of the Office of Administrative Hearings" involving the revocation or issuance of a "right, authority, license, or privilege . . . ." (Gov. Code, §§ 11502, subd. (a), 11503, 11504.) The real point may be that the provisions in this chapter, cited by appellant in his pleadings, have no application to the present situation. If such is the case, that is the argument that should have been urged on demurrer.

Appellant's argument in favor of the applicability of the statute of limitations in Labor Code section 1732 is equally deficient. Because appellant is not the contractor and is—as far as the record indicates—not the assignee of the contractor, this provision has no applicability to those in his position, as the Supreme Court noted in *Lujan* and the court in *J & K Painting* held.

In his reply brief, appellant references Code of Civil Procedure section 1094.6. That statute provides that a petition for administrative writ pursuant to section 1094.5 must be filed "not later than the 90th day following the date on which the decision becomes final. If there is no provision for reconsideration of the decision, or for a written decision or written findings

supporting the decision, in any applicable provision of any statute, charter, or rule, for the purposes of this section, the decision is final on the date it is announced." (Code Civ. Proc., § 1094.6, subd. (b).) Appellant's pleading was timely under this statute.

Because DLSE failed to provide appellant the type of hearing to which he was entitled, there is some question concerning whether the proper procedure for obtaining review of DLSE's actions should be by way of administrative mandate or ordinary mandate or perhaps both. Courts have held that "[i]f a hearing is required by law, administrative mandate may be appropriate to secure it. [Citation.] Similarly, when a hearing is not explicitly required by law but compelled by due process considerations, administrative mandate will lie. [Citation.]" (*Civil Service Com. v. Velez* (1993) 14 Cal.App.4th 115, 118 [17 Cal.Rptr.2d 490]; accord, *Kirkpatrick v. City of Oceanside* (1991) 232 Cal.App.3d 267, 279 [283 Cal.Rptr. 191].)

This court took a different approach in *DeCuir v. County of Los Angeles* (1998) 64 Cal.App.4th 75 [75 Cal.Rptr.2d 102]. There, the civil service commission had refused to hold a hearing and made a decision based on review of written materials. The claimant contended he was excused from seeking review by way of ordinary mandate because he had no clear right to a hearing. This court held: "The commission's denial of a hearing is itself a reviewable determination. That was the context in which [the claimant's] claim was presented and reviewed. The fact that [the claimant] did not prevail does not establish that a petition for ordinary mandate will automatically fail. . . . [M]andate is not only available to review the action of the commission where there is a hearing, but is the appropriate procedure to test the commission's denial of a hearing." (*Id.* at p. 82.)

As we have seen, a petition for ordinary writ was also utilized in *J & K Painting*, where the subcontractor's claim revolved around the allegation that the Commissioner of Labor had not exercised appropriate discretion in determining the amount of penalty to assess. ■ Under well-established law, an ordinary writ of mandamus may be issued "to compel the performance of an act which the law specially enjoins . . . ." (Code Civ. Proc., § 1085.) "Two requirements are essential: a clear, present and usually ministerial duty upon the part of the respondent, and a clear, present and beneficial right in the petitioner to performance of that duty." (*Pacific Bell v. California State & Consumer Services Agency* (1990) 225 Cal.App.3d 107, 118 [275 Cal.Rptr. 62].) Accordingly, ordinary mandamus "is an appropriate remedy to compel the exercise of discretion by a government officer . . . ." (*Ibid.*)

We do not believe appellant's petition was rightfully characterized for purposes of sustaining a demurrer without leave to amend as solely one for administrative mandate. We appreciate that appellant cited only Code of Civil Procedure section 1094.5 in his pleadings, but a petitioner's characterization of his claim is not conclusive. (See *Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 847-849 [41 Cal.Rptr.2d 567] [plaintiff's denomination of his claims as breach of contract, breach of fiduciary duty, and breach of covenant, was disregarded where the remedy under the facts alleged was an action for ordinary mandate].) A fair reading of the allegations of appellant's pleadings indicates that he is not solely concerned with flaws in the hearing officer's finding of reasonable cause. Appellant also alleged that he was not provided with a hearing by DLSE which complies with due process and that the highest penalty was assessed without consideration of the facts. The latter charge is clearly reviewed by ordinary mandate. (*J & K Painting Co. v. Bradshaw, supra*, 45 Cal.App.4th 1394.) Where an agency has failed to provide a hearing required by law, either a petition for administrative mandate or a petition for ordinary mandate may be utilized to obtain the requisite hearing. In either case, whether his petition is viewed as one for administrative mandamus or ordinary mandamus, appellant's pleading was timely filed, and the demurrer of DLSE based on statute of limitations grounds should have been overruled.

We do not reach the issue of whether a writ should issue, because the case was dismissed at a preliminary stage and the trial court never reached the substantive issues. We would reemphasize, however, that at the time appellant made his original request in 1999, the Ninth Circuit's decision in *G & G Fire Sprinklers* required a due process hearing to be held; that the United States Supreme Court's intervening decision in *Lujan* requires some post-deprivation avenue of relief to be made available to subcontractors in appellant's position; and that the current statute requires the Labor Commissioner to conduct an administrative hearing to determine whether the wage penalty assessment was correct or incorrect. We also note that while this dispute drags on, the funds are not available for disbursement to their rightful owner(s)—either appellant or the allegedly injured workers. On the record provided to us, it appears that appellant is entitled to issuance of a writ unless the evidence establishes that appellant received a hearing addressing the issue of whether he violated the prevailing wage laws in some other forum.

### DISPOSITION

The judgment is affirmed as to LAUSD and the individual respondents Rascoe, Curtis, Tang-Wong, and Macey. These respondents are entitled

to their costs on appeal from appellant. The judgment is reversed as to respondent DLSE only. Appellant is entitled to his costs on appeal from DLSE.

Epstein, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied August 3, 2001, and appellant's petition for review by the Supreme Court was denied October 17, 2001.