[No. F059454. Fifth Dist. Mar. 16, 2011.]

DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR STANDARDS ENFORCEMENT, Plaintiff and Respondent, v. DAVIS MORENO CONSTRUCTION, INC., et al., Defendants and Appellants.

562

564

COUNSEL

McCormick, Barstow, Sheppard, Wayte & Carruth, Todd W. Baxter, Scott M. Reddie; Law Offices of William C. Hahesy and William C. Hahesy for Defendant and Appellant Davis Moreno Construction, Inc.

Dowling, Aaron & Keeler, Daniel K. Klingenberger, Stephanie Hamilton Borchers and Micah K. Nilsson for Defendant and Appellant Ayodeji A. Ogundare.

Ramon Yuen-Garcia for Plaintiff and Respondent.

OPINION

**FRANSON, J.**—Appellants Ayodeji A. Ogundare, individually and doing business as Pacific Engineering Company (Pacific) and Davis Moreno Construction, Inc. (Davis), each moved to vacate a judgment entered against them pursuant to Labor Code section 1742.[1] Pacific contended that the judgment against it was not authorized by section 1742, subdivision (d) because it was filed in the wrong county and was therefore void. Davis raised the same contention, and further argued that the judgment against it had been obtained by means of extrinsic fraud. The superior court, relying on *Pressler v. Donald L. Bren Co.* (1982) 32 Cal.3d 831 [187 Cal.Rptr. 449, 654 P.2d 219] (*Pressler*) and *Maynard v. Brandon* (2005) 36 Cal.4th 364 [30 Cal.Rptr.3d 558, 114 P.3d 795] (*Maynard*), concluded it did not have jurisdiction to grant relief, and denied both motions. Appellants now renew these same contentions on their appeals to this court. As we shall explain, we disagree with Pacific's contentions, but agree with Davis that the superior court had jurisdiction to entertain Davis's motion on its merits. We reverse the order of the trial court denying Davis's motion, but affirm as to Pacific.

Section 1742 describes a procedure under which the state can obtain a judgment against a contractor or subcontractor for violations of the state's

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

prevailing wage law. In part I. of our decision, we hold that a court is not without power to determine whether a judgment obtained by the state utilizing the section 1742 procedure was the product of extrinsic fraud.

Subdivision (d) of section 1742 provides that a judgment obtained pursuant to that section is appropriately entered in "any county in which the affected contractor or subcontractor has property or has or had a place of business." In part II. of our decision, we hold that "any county in which the affected contractor or subcontractor . . . has or had a place of business" includes any county in which the affected contractor or subcontractor performed its work on the public works project on which the violations occurred.

## FACTS

Pacific is in the construction business. In December 2008, Pacific was a subcontractor for Davis on a construction project for the Exeter Union Elementary School District in Tulare County (the School District). Davis was the general contractor. On December 3, 2008, the Labor Commissioner of the State of California, acting through the Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE), served Pacific and Davis with a "Civil Wage and Penalty Assessment" (the assessment). Under the heading "Notice of Right to Obtain Review—Formal Hearing," the assessment expressly informed its recipients that "[i]n accordance with Labor Code section 1742, an affected contractor or subcontractor may obtain review of this Civil Wage and Penalty Assessment by transmitting a written request to the office of the Labor Commissioner . . . within 60 days after service of the assessment." The assessment provided the address where any such request for review should be sent, and further stated: "Failure by a contractor or subcontractor to submit a timely Request for Review will result in a final order which shall be binding on the contractor and subcontractor . . . ." The assessment also informed its recipients: "In accordance with Labor Code section 1742[, subdivision] (d), a certified copy of a final order may be filed by the Labor Commissioner in the office of the clerk of the superior court in any county in which the affected contractor or subcontractor has property or has or had a place of business. The clerk, immediately upon the filing, shall enter judgment for the State against the person assessed in the amount shown on the certified order."

Pacific did not submit a request for review to the Labor Commissioner. Nor did Davis. On February 5, 2009, the Labor Commissioner certified the final order of assessment and, on February 11, 2009, the Tulare County Superior Court entered judgment against Pacific and Davis jointly and severally for $185,590.83, plus an additional $12,000 in penalties against Pacific only.

In August of 2009, Pacific filed a motion to set aside the judgment against it under Code of Civil Procedure section 473, subdivision (b), based on mistake, inadvertence and/or excusable neglect. The motion included a declaration from Ogundare stating he had received several wage and penalty assessments pertaining to several different projects and that he "inadvertently did not provide [his] attorney with the documents related to the Exeter job in a timely manner." On September 1, 2009, the court (per the Honorable Patrick J. O'Hara) denied the motion as untimely, concluding that the six-month window for seeking relief under Code of Civil Procedure section 473, subdivision (b) does not excuse a party from other, shorter, statutory deadlines, including Labor Code section 1742, subdivision (c). Citing *Maynard, supra*, 36 Cal.4th 364 and *Pressler, supra*, 32 Cal.3d 831, the court stated, "[t]his court is without jurisdiction to provide any relief . . . ." In October of 2009, Pacific filed a second motion to set aside the judgment, this time under Code of Civil Procedure section 473, subdivision (d). Pacific argued that the Tulare County Superior Court did not have jurisdiction to enter the judgment because it was entered in the wrong county under section 1742, subdivision (d), and the judgment was therefore void.

Also in October 2009, Davis filed a motion to set aside the February 5, 2009, final order of assessment and the February 11, 2009, judgment entered in Tulare County Superior Court, and to order that defendant Davis be granted a review hearing of the assessment. Davis raised the same jurisdictional argument made by Pacific under section 1742, subdivision (d) and further contended its failure to submit a request for review to the Labor Commissioner was a direct result of representations by a deputy labor commissioner that Davis need not do so.

The court heard both motions and on November 25, 2009, issued its order denying both motions as untimely. The court's ruling cited *Pressler, supra*, 32 Cal.3d 831 and *Maynard, supra*, 36 Cal.4th 364 and stated that "the court [cannot] overcome its initial conclusion that it does not have jurisdiction" to grant relief. The court also concluded that the judgment was not void under section 1742, subdivision (d), because it was entered in a county where both defendants had an interest in the construction monies retained by the School District, which the trial court impliedly found to qualify as a "property" under section 1742, subdivision (d).

## DISCUSSION

I. *The Trial Court Should Have Determined Whether the Final Assessment Order and Judgment Against Davis Was Obtained by Extrinsic Fraud*

Davis's primary contention is that the final order of assessment and judgment against it was obtained by extrinsic fraud, and that the superior court had the power to determine whether the final order of assessment and judgment was so obtained. Davis presented the declaration of its operations manager, Steven Abston. Abston declared that he received the assessment dated December 3, 2008, that it "related to the alleged failure by Pacific Engineering to pay certain wages and other items to its employees," and that "[t]he employees who are the subject of the Civil Wage and Penalty Assessment were not employees of Defendant Davis Moreno." He further stated that he spoke with Sherry Gentry of the DLSE on December 9, 2008. "When I spoke to her, it appeared that the assessment was indicating that the employees had been paid essentially nothing by Pacific Engineering for any of their work. She told me that she knew that the numbers indicated in the Civil Wage and Penalty Assessment were grossly inflated as they were based on each employee being paid nothing by Pacific Engineering for any of their work. She also told me that she knew that the employees had been paid, but that the DLSE was attempting to motivate Pacific Engineering to provide the recordkeeping documents that it requires. She further told me that, after receiving those records, DLSE intended to revise the numbers. She instructed me to do nothing further until further notice from the DLSE and to disregard the instructions in the Civil Wage and Penalty Assessment other than to simply discontinue paying Pacific Engineering. . . . [¶] . . . I subsequently talked to Ms. Gentry again on December 11, 2008 and informed her that Ayo Ogundare [from Pacific] would be contacting her for a meeting. She indicated that she had already talked with Mr. Ogundare and that a meeting had been set up and she hoped that the issue would be resolved shortly. [¶] Based upon the statements by Sherry Gentry of the DLSE, neither I nor Davis Moreno took any action, concerning the Civil Wage and Penalty Assessment, including seeking any review. Had I known that the DLSE intended to take action against defendant Davis Moreno other than asking it to hold any monies that were due to Pacific Engineering, I would have caused Defendant Davis Moreno to seek a timely review of the Civil Wage and Penalty Assessment."

Abston further declared he did not become aware of the February 11, 2009, judgment until August 4, 2009, when he "was provided with a copy" of it. He stated that it was a representative of the School District who advised him of the judgment.

A. *Section 1742*

■ Section 1742 is part of California's prevailing wage law. (§§ 1720–1861.) The "general thrust" (*State Building & Construction Trades Council of California v. Duncan* (2008) 162 Cal.App.4th 289, 295 [76 Cal.Rptr.3d 507] (*State Building*)) of the prevailing wage law is that "Except for public works projects of one thousand dollars ($1,000) or less, not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed, and not less than the general prevailing rate of per diem wages for holiday and overtime work . . . shall be paid to all workers employed on public works." (§ 1771.) "A contractor or subcontractor who pays less than the established prevailing rate may be assessed civil penalties . . . , may be suspended from bidding or working on public works projects for up to three years . . . , and is also subject to criminal prosecution for failing to maintain payroll records demonstrating compliance . . . ." (*State Building, supra*, 162 Cal.App.4th at p. 296, citations omitted.)

"If the Labor Commissioner or his or her designee determines after an investigation that there has been a violation of this chapter, the Labor Commissioner shall with reasonable promptness issue a civil wage and penalty assessment to the contractor or subcontractor or both. The assessment shall be in writing and shall describe the nature of the violation and the amount of wages, penalties, and forfeitures due and shall include the basis for the assessment." (§ 1741, subd. (a).)

■ Section 1742 describes the procedure available to a contractor or subcontractor who has been issued a civil wage and penalty assessment by the Labor Commissioner. "An affected contractor or subcontractor may obtain review of a civil wage and penalty assessment under this chapter by transmitting a written request to the office of the Labor Commissioner that appears on the assessment within 60 days after service of the assessment." (§ 1742, subd. (a).) If a hearing is requested, it is held before an impartial hearing officer appointed by the director of the Department of Industrial Relations. (§ 1742, subd. (b).) At this hearing "[t]he contractor or subcontractor shall have the burden of proving that the basis for the civil wage and penalty assessment is incorrect. . . . [¶] Within 45 days of the conclusion of the hearing, the director shall issue a written decision affirming, modifying, or dismissing the assessment. The decision of the director shall consist of a notice of findings, findings, and an order." (*Ibid.*)

A contractor or subcontractor dissatisfied with the decision of the director "may obtain review of the decision . . . by filing a petition for a writ of mandate to the appropriate superior court pursuant to Section 1094.5 of the

Code of Civil Procedure within 45 days after service of the decision." (§ 1742, subd. (c).) If no such petition is filed within this 45-day period, the director's "order shall become final." (*Ibid.*) Section 1742 "shall provide the exclusive method for review of a civil wage and penalty assessment by the Labor Commissioner under this chapter . . . ." (§ 1742, subd. (g).)

 In the matter before us, neither Davis nor Pacific requested a review of the assessment. "If no hearing is requested within 60 days after service of the assessment, the assessment shall become final." (§ 1742, subd. (a).) "A certified copy of a final order may be filed by the Labor Commissioner in the office of the clerk of the superior court in any county in which the affected contractor or subcontractor has property or has or had a place of business. The clerk, immediately upon the filing, shall enter judgment for the state against the person assessed in the amount shown on the certified order." (§ 1742, subd. (d).) There is nothing in section 1742, or in the regulations implementing it (see § 1742, subd. (b); Cal. Code Regs., tit. 8, §§ 17201–17270), expressly requiring the Labor Commissioner to serve notice on the affected contractor or subcontractor that a judgment has been entered against that contractor or subcontractor.

### B. *Extrinsic Fraud*

 "Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding. [Citation.] Examples of extrinsic fraud are: . . . failure to give notice of the action to the other party, and convincing the other party not to obtain counsel because the matter will not proceed (and then it does proceed). [Citation.] The essence of extrinsic fraud is one party's preventing the other from having his day in court." (*City and County of San Francisco v. Cartagena* (1995) 35 Cal.App.4th 1061, 1067 [41 Cal.Rptr.2d 797]; accord, *Estate of Sanders* (1985) 40 Cal.3d 607, 614 [221 Cal.Rptr. 432, 710 P.2d 232].) Extrinsic fraud only arises when one party has in some way fraudulently been prevented from presenting his or her claim or defense. (*In re Marriage of Modnick* (1983) 33 Cal.3d 897, 905 [191 Cal.Rpt. 629, 663 P.2d 187]; *Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471 [82 Cal.Rptr. 489, 462 P.2d 17]; *Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1300 [24 Cal.Rptr.3d 780]; accord, *Moghaddam v. Bone* (2006) 142 Cal.App.4th 283, 290 [47 Cal.Rptr.3d 602].)

A motion to vacate a judgment for extrinsic fraud is not governed by any statutory time limit, but rather is addressed to the court's " ' "inherent equity power" ' " to grant relief from a judgment procured by extrinsic fraud. (*Moghaddam v. Bone, supra,* 142 Cal.App.4th at p. 290; *Gibble v. Car-Lene*

*Research, Inc.* (1998) 67 Cal.App.4th 295, 314 [78 Cal.Rptr.2d 892]; see also *Olivera v. Grace* (1942) 19 Cal.2d 570, 573 [122 P.2d 564]; 8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 215, p. 823.)

We do not agree with the superior court's conclusion that *Pressler, supra*, 32 Cal.3d 831 and *Maynard, supra*, 36 Cal.4th 364 compel a conclusion that the court was without power to grant relief for extrinsic fraud, even if extrinsic fraud could be established. *Pressler* involved an administrative proceeding before the Labor Commissioner for unpaid wages under section 98 et seq. This "procedure is designed to provide a speedy, informal, and affordable method of resolving wage claims." (*Cuadra v. Millan* (1998) 17 Cal.4th 855, 858 [72 Cal.Rptr.2d 687, 952 P.2d 704], fn. omitted, disapproved on another ground in *Samuels v. Mix* (1999) 22 Cal.4th 1, 16, fn. 4 [91 Cal.Rptr.2d 273, 989 P.2d 701].) Under that procedure, after the Labor Commissioner decides the claim, "[w]ithin 10 days after notice of the decision any party may appeal to the appropriate court, where the claim will be heard de novo . . . ." (*Cuadra*, at p. 859; see also § 98.2, subd. (a).) "If no notice of appeal of the order, decision, or award is filed within the period set forth in subdivision (a), the order, decision, or award shall, in the absence of fraud, be deemed the final order." (§ 98.2, subd. (d).) The Labor Commissioner shall then file a certified copy of the final order "with the clerk of the superior court of the appropriate county" (§ 98.2, subd. (e)) and thereby obtain a judgment.

In *Pressler*, an employer attempted to appeal from an award of the Labor Commissioner. The employer received a copy of the Labor Commissioner's decision on August 14, 1980. The employer's attorney prepared a notice of appeal on August 18, 1980, and instructed his secretary "to mail the original to the superior court for filing . . . . However, the original with the filing fee was not mailed to the superior court until on or about August 26, 1980. As a result, the notice of appeal was not timely filed." (*Pressler, supra*, 32 Cal.3d at p. 834.) It was filed three days late. The employer argued that the court had the authority to allow the appeal under Code of Civil Procedure section 473. However, the *Pressler* court noted that Code of Civil Procedure section 473 does not apply where a party failed to file a timely notice of appeal because of excusable neglect, etc. Instead, a court's authority to allow an appeal filed after a statutory deadline "is not derived from section 473 of the Code of Civil Procedure but is 'inherent in the court's jurisdiction to determine its own jurisdiction. [Citation.]' " (32 Cal.3d at p. 834, fn. 5.)

The "sole question presented by" the *Pressler* case was whether a court may consider an appeal which has been taken after the expiration of the 10-day period for filing an appeal, as prescribed by section 98.2, subdivision (a). (*Pressler, supra*, 32 Cal.3d at p. 834.) The court concluded that, just as with a "conventional appeal" (*id.* at p. 835) of a superior court judgment to

an appellate court, "[t]he requirement as to the time for taking an appeal from a decision of the Labor Commissioner was intended to be mandatory and jurisdictional. Accordingly, a court may not consider an appeal taken subsequent to the expiration of the statutory period because of mistake, inadvertence or other similar excuse." (*Id.* at pp. 837–838.)

■ The *Pressler* case is distinguishable from the matter presently before us because here, appellant Davis is not seeking relief from any deadline for filing an appeal under Code of Civil Procedure section 473, subdivision (b) or for the court to expand its jurisdiction under its inherent power. Instead, Davis is seeking to set aside a final order of assessment and judgment obtained against it, contending both were obtained by extrinsic fraud and are therefore void under Code of Civil Procedure section 473, subdivision (d). In *Pressler*, the employer made no contention that the employee obtained a judgment by extrinsic fraud. Nothing the employee or the Labor Commissioner did in *Pressler* caused or was alleged to have caused a final order adverse to the employer without a hearing on the employee's claim. The employee and employer did in fact have an administrative hearing, after which "the Labor Commissioner issued a decision awarding Pressler his full commissions." (*Pressler, supra,* 32 Cal.3d at p. 833.) Furthermore, section 98.2 expressly points out that when no notice of appeal is filed, the order, decision, or award of the Labor Commissioner shall only be deemed a final order "in the absence of fraud." (§ 98.2, subd. (d).) The *Pressler* opinion also expressly points out that "[t]he only exception" to a decision of the Labor Commissioner becoming final when no appeal is timely filed from that decision "is in the case of fraud." (*Pressler, supra,* 32 Cal.3d at p. 837, fn. 10,) Since only a certified copy of the "final order" of the Labor Commissioner may be filed with the superior court to obtain a judgment (§ 98.2, subd. (e)), it follows that whenever a judgment is obtained by means of a purported final order that had been obtained by fraud, the judgment itself has been obtained by fraud, and an aggrieved party could move to vacate that judgment. Nothing in *Pressler* holds or even remotely suggests otherwise.

The superior court's reliance on *Maynard, supra,* 36 Cal.4th 364 is similarly unpersuasive. The issue in *Maynard* was "whether relief under Code of Civil Procedure section 473, subdivision (b) is available when a party files an untimely request for a trial following an arbitration conducted pursuant to the mandatory fee arbitration act." (*Maynard, supra,* 36 Cal.4th at p. 368, fn. omitted; see also Bus. & Prof. Code, § 6200 et seq.) Again, the case has nothing to do with Code of Civil Procedure section 473, subdivision (d) or a judgment or order obtained or allegedly obtained by fraud. The superior court in this case appears to have relied on a discussion of *Pressler* in *Maynard* in which the *Maynard* court stated, "*Pressler* held that neither [Code of Civil Procedure] section 473 nor equitable grounds could excuse the untimely filing" of a notice of appeal. (*Maynard, supra,* 36 Cal.4th at p. 375,

fn. omitted.) Neither *Pressler* nor *Maynard* dealt with or mentioned extrinsic fraud, void judgments or orders, or Code of Civil Procedure section 473, subdivision (d). The cited language does not provide justification for the superior court's ruling, since Davis is not seeking relief from an untimely filing of a notice of appeal.

Actually, *Maynard* appears to provide further support for our conclusion that relief may be obtained from a judgment obtained by extrinsic fraud under section 1742. In its footnote 6, the *Maynard* court stated: *"Pressler . . .* was decided before [Code of Civil Procedure] section 473 was divided into subdivisions in 1996. (Stats. 1996, ch. 60, § 1.) As appropriate, references to [Code of Civil Procedure] section 473 made in connection with the text's discussion of *Pressler* and other authority predating this amendment should be read as pertaining to the relief provisions now found within [Code of Civil Procedure] section 473, subdivision (b)." (*Maynard, supra,* 36 Cal.4th at p. 375, fn. 6.) Subdivision (b) of Code of Civil Procedure section 473 pertains to relieving "a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." (Code Civ. Proc., § 473, subd. (b).) It does not pertain to Code of Civil Procedure section 473, subdivision (d) or a judgment taken against a party by fraud.

## II. *The Judgment Was Not Filed in the Wrong County*

Section 1742, subdivision (d) states: "A certified copy of a final order may be filed by the Labor Commissioner in the office of the clerk of the superior court in any county in which the affected contractor or subcontractor has property or has or had a place of business. The clerk, immediately upon the filing, shall enter judgment for the state against the person assessed in the amount shown on the certified order." The motions by Davis and Pacific asserted that the Tulare County judgment was void. Each contended (1) it had no property in Tulare County, and (2) it did not have and has not had a place of business in Tulare County. Davis presented the declaration of its president, Stephen Davis, so stating, and further declaring that its place of business was at a specified address in Fresno, which is in Fresno County. Pacific presented the declaration of its owner, Ogundare, similarly so stating, and further declaring that Pacific's place of business was at a specified address in Bakersfield in Kern County.[2]

---

[2] Appellant Pacific has filed a motion in this court asking this court to take judicial notice of various documents filed in a Kern County Superior Court action involving Pacific and the DLSE. Pacific argues that the Kern County Superior Court documents "simply are one example to establish for this Court that Respondent DLSE and Appellant Pacific Engineering Company have been, and continue to be, actively engaged in litigation, negotiation and

The School District was served with the December 3, 2008, assessment. Under section 1727, subdivision (a), the School District, as the awarding body, was required to withhold and retain amounts necessary to satisfy the assessment, pending receipt of a final order that is no longer subject to judicial review. Although the appellate record is silent on this issue, we assume that monies were withheld by the School District on receipt of the assessment. The parties did present evidence that the School District was withholding the payment of funds from Davis for work done for the School District in response to the later Tulare County judgment. Assuming the withheld funds constituted "property" within the definition of section 1742, subdivision (d), the DLSE argued that this was "Moreno's money" and that "[s]ince [Davis] Moreno's money is being withheld by the District in Tulare County, the proper venue for the entry of judgment is Tulare County."

The superior court agreed, stating "[t]he court concludes that the judgment was not a void judgment, as Defendants had an interest in the construction money retained in this district." Although we assume the trial court concluded that retained monies, as intangibles, fell within the definition of "property" as defined in section 1742, subdivision (d), we need not address that issue on the limited record before us. As outlined below, we conclude that the phrase "any county in which the affected contractor or subcontractor . . . has or had a place of business" (§ 1742, subd. (d)) allowed the Labor Commissioner to file the final order against both Pacific and Davis in Tulare County.

---

attempted global resolution of a number of alleged wage and hour violations that occupy judicial and agency resources." Whether Pacific does or does not reach a global resolution of its disputes with the DLSE is not an issue before us on Pacific's appeal, and thus the Kern County Superior Court documents are not helpful to us in deciding Pacific's appeal. Nor is there anything in the record on Pacific's appeal demonstrating that any of these Kern County Superior Court records were presented to the Tulare County Superior Court in connection with the latter's consideration of Pacific's motion to vacate the judgment. Most of them are dated later than November 25, 2009, and thus did not even yet exist when the court ruled on that date on Pacific's motion to vacate the judgment.

" 'Reviewing courts generally do not take judicial notice of evidence not presented to the trial court' absent exceptional circumstances. [Citation.] . . . 'This rule preserves an orderly system of [litigation] by preventing litigants from circumventing the normal sequence of litigation.' [Citation.]" (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2 [112 Cal.Rptr.3d 853, 235 P.3d 152]; see also *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085]; *People v. Preslie* (1977) 70 Cal.App.3d 486, 493 [138 Cal.Rptr. 828].) No exceptional circumstances appear that would justify deviating from this general rule in the present case. Pacific's "Motion for Judicial Notice" filed on June 25, 2010, is denied. Pacific's "Request to File Additional Attachment to Motion for Judicial Notice" filed on September 24, 2010, is in substance a motion asking this court to take judicial notice of another document filed in the Kern County litigation in July of 2010. That motion is also denied.

The record on appeal shows the trial court had undisputed evidence that each appellant worked on a project known as the "Multi-Use and Administration Building at Wilson School" for the School District in Tulare County. From the record before us, Pacific was on the jobsite for at least 11 weeks, their contract was for $382,077, and they had at least 24 employees working on the project. Davis, as the prime contractor, was obviously on the jobsite for a much longer period, provided substantial services on the jobsite, and received substantially more compensation for its services.

We asked the parties to submit supplemental briefing specifically addressing the question "Why should this court not conclude that the 'Multi-Use and Administration Building' project was a 'place of business' in Tulare County for each appellant?" They did so. Davis and Pacific both contend that the Tulare County project site was not "a place of business" for either of them. Pacific argues that the phrase "a place of business" in section 1742, subdivision (d) means "a fixed place of business where the company receives mail, keeps an office, etc." Davis similarly argues that "the phrase 'place of business' has a narrow application that implies a particular or fixed location where the scene of operations for Davis Moreno is located, as opposed to a particular transient worksite where employees of Davis Moreno are either presently working, or may have worked pursuant to a public works contract." The DLSE, on the other hand, argues that "Tulare County, where [Davis] and [Pacific] performed the construction work, is a 'place of business' within the meaning of Labor Code section 1742(d)." As we shall explain, we agree with the DLSE on this issue.

■ The meaning of the phrase "a place of business" presents an issue of statutory construction. "When construing a statute, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' (*DuBois* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978].) The words of the statute are the starting point. 'Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299] . . . .) If the language permits more than one reasonable interpretation, however, the court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154].) After considering these extrinsic aids, we 'must select the construction that

comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' (*People* v. *Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].)" (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977–978 [90 Cal.Rptr.2d 260, 987 P.2d 727].)

In part I. of this decision we explained, in general terms, the operation of the prevailing wage law insofar as it pertains to a contractor or subcontractor who wishes to contest a wage and penalty assessment issued by the Labor Commissioner. (§ 1741; see also *Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 985–986 [4 Cal.Rptr.2d 837, 824 P.2d 643]; *State Building, supra*, 162 Cal.App.4th at pp. 294–296.) We now address the enforcement mechanism for collecting a final wage and penalty assessment.

█ California's prevailing wage law is a minimum wage law. (*Reyes v. Van Elk, Ltd.* (2007) 148 Cal.App.4th 604, 612 [56 Cal.Rptr.3d 68].) "The overall purpose of the prevailing wage law is to protect and benefit employees on public works projects." (*Lusardi Construction Co. v. Aubry, supra*, 1 Cal.4th at p. 985.) "This general objective subsumes within it a number of specific goals: to protect employees from substandard wages that might be paid if contractors could recruit labor from distant cheap-labor areas; to permit union contractors to compete with nonunion contractors; to benefit the public through the superior efficiency of well-paid employees; and to compensate nonpublic employees with higher wages for the absence of job security and employment benefits enjoyed by public employees." (*Id.* at p. 987.) It is to be liberally construed to further these goals. (*City of Long Beach v. Department of Industrial Relations* (2004) 34 Cal.4th 942, 950 [22 Cal.Rptr.3d 518, 102 P.3d 904].)

█ The comprehensive statutory scheme for processing and handling prevailing wage claims is meant to be efficient and provide swift recourse for wage violations. The Labor Commissioner (acting through the DLSE) may investigate and determine prevailing wage violations and issue a civil wage and penalty assessment against a general contractor and/or subcontractor. The assessment is then served on the contractor, subcontractor and the awarding body, in this case, the School District. (§ 1742, subd. (a).) Upon receipt of an assessment, the awarding party must withhold sufficient money to satisfy the assessment. (§ 1727, subd. (a).) If, as alleged in this case, a timely review of the assessment is not made by the contractor or subcontractor, the assessment becomes final. (§ 1742, subd. (a).) Upon service of a certified copy of a final

order, the awarding body shall promptly transmit the amount specified in the final order to the Labor Commissioner. (§ 1742, subd. (f).)

As written, a certified copy of the final assessment is all that is necessary to collect the past due wages from the awarding party, for eventual payment to the workers. Under normal circumstances, a judgment is not required or necessary. Only when there are not sufficient monies held by the awarding body to pay the assessment is a judgment necessary.

To appreciate the legislative intent and policy considerations behind section 1742, particularly subdivision (d), it is instructive to examine the predecessor statutes, initially enacted in 1937. Under those statutes, to enforce prevailing wage compliance, the DLSE was authorized to issue a withholding order to a public agency requiring it to withhold and retain funds from prime contractors if the DLSE determined, after its own investigation, that the contractor or one of its subcontractors violated the prevailing wage law. (Former § 1727.) The withholding order included the amount of wages that had been underpaid, as well as a per diem penalty. (Former § 1775.) Although required to conduct an investigation before a notice to withhold could be issued, the DLSE was not required to give notice to the contractor or subcontractor or hold a hearing before the notice to withhold was issued. The remedy for the prime contractor was a civil lawsuit against the awarding body to recover the money withheld (former §§ 1730–1733), where the contractor had the burden of proof. If a suit was not brought within 90 days, the withheld funds were distributed to the workers. (See *G & G Fire Sprinklers, Inc. v. Bradshaw* (9th Cir. 1998) 156 F.3d 893, 898, ultimately reversed in *Lujan v. G & G Fire Sprinklers, Inc.* (2001) 532 U.S. 189 [149 L.Ed.2d 391, 121 S.Ct. 1446].) If a civil action was brought, the monies were held until resolution of the dispute. (Former § 1731.) The expectation was that there would be sufficient monies withheld to pay the wages and penalties due. If there was insufficient money due the contractor from the awarding body to pay wages and penalties, former section 1775, as amended in 1957, allowed the DLSE to file a civil action to recover the difference. (Stats. 1957, ch. 397, § 1, p. 1240.) Such an action had a 90-day statute of limitations and could be filed in any court of competent jurisdiction, which clearly included where the awarding body was located or the project was constructed. (Code Civ. Proc., § 395, subd. (a).)

The process for collecting wage and penalty assessments was eventually challenged for lack of due process protections for contractors and subcontractors because the then existing statutory scheme did not afford pre- or postdeprivation hearings when payments were withheld. (See *G & G Fire Sprinklers, Inc. v. Bradshaw, supra*, 156 F.3d 893.) To correct these perceived due process shortcomings, the statutory scheme was amended in 2000 and

section 1742 was adopted. (Stats. 2000, ch. 954, § 10, p. 7026.) However, the process still retained its expedited statutory features, as compared to common law contract claims. (*Mobley v. Los Angeles Unified School Dist.* (2001) 90 Cal.App.4th 1221, 1238, 1245 [109 Cal.Rptr.2d 591].)

■ Like its predecessor statutes, the purpose of section 1742, subdivision (d) is to facilitate the collection of the amount due from the contractor or subcontractor as determined by the "final order" (derived from the "withholding" order of the earlier statutes) of the DLSE. (§ 1742, subd. (d).) Unlike before, however, the new statutory scheme provides the right to notice and a hearing, if timely requested. The final order itself results from either the "decision of the director" after the hearing (§ 1742, subd. (b)) when no petition for writ of mandate is filed within 45 days after service of the decision (§ 1742, subd. (c)), or from the wage and penalty assessment itself when it is not contested and is allowed to "become final" (§ 1742, subd. (a)), which is what occurred in this case.

Under section 1742, subdivision (f), a judgment is not necessary for the DLSE to demand that the awarding body turn over the withheld money to the Labor Commissioner. "An awarding body . . . shall, upon receipt of a certified copy of a final order that is no longer subject to judicial review, promptly transmit the withheld funds . . . to the Labor Commissioner." (§ 1742, subd. (f).) The statute makes the turnover self-executing. A judgment is only necessary when, like before, there are insufficient monies withheld to satisfy the final order. If so, rather than filing a civil action in a county where the project was located and the work performed (as allowed under former § 1775), section 1742, subdivision (d) was adopted to authorize the DLSE to file the final order in the county where either the contractor or subcontractor has or had a place of business.[3] As will be explained later, we conclude that this includes the county where the project was located and where the contractor and/or subcontractor performed their business.

"[A] prevailing wage statute should be liberally construed in favor of the worker . . . ." (*Walker v. County of Los Angeles* (1961) 55 Cal.2d 626, 635 [12 Cal.Rptr. 671, 361 P.2d 247].) And as we have already pointed out, "[w]e must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute . . . ." (*People v. Jenkins, supra,* 10 Cal.4th at p. 246.) It would not be reasonable to now require the DLSE to file a judgment in the county of the main office of a contractor or subcontractor, which could be hundreds of miles away from where the work was performed.

---

[3] As part of the adoption of section 1742, subdivision (d), section 1775 was again amended, deleting the provision for the DLSE to file an action to recover any underwithholdings in any county of competent jurisdiction.

As outlined above, the prevailing wage determination and collection procedure was meant to be simple and expeditious, and now provides for notice and opportunity to be heard. It does not seem reasonable for the Legislature to have intended, by enacting section 1742, subdivision (d), to make it more cumbersome or onerous for the Labor Commissioner seeking a judgment for wages from a contractor than would be required in an ordinary civil action by a worker. If a worker chose to file a civil action against his employer for failure to pay prevailing wages, he could properly do so in the county where the project was built and, if successful, obtain a judgment in that county. The worker would not be required to go to the county where the contractor maintained its main office to seek payment of wages.

Pacific argues that the phrase "a place of business" is unambiguous and that we therefore need look no further than the words of the statute to conclude that the phrase "is commonly understood to mean a fixed location where a business receives mail and operates out of." We see at least two problems with this argument. First, it is well known many contractors, large and small, may have a fixed business office in a single location, but most contractor's work or business is performed "off-site," where a building or structure is being constructed at any given time, from a few hours to years. Large construction companies may have fully equipped modular offices on these worksites, complete with utilities, where their employees work and the tools of their trade, equipment and construction materials are stored. Many smaller contractors may not have what could be considered a formal or structural "office," but rather work out of their pickup trucks, where they store their tools, materials and equipment, and use their cell phones. In these situations, the contractor "operates out of" those jobsites. Second, many businesses receive mail at a post office box address, and we do not think it can fairly be said that the business "operates out of" a post office box. Certainly many businesses do have a structural office, with a mailing address at a particular street name and number, at which business is conducted. The phrase "a place of business" would certainly include such a structural office, but we reject the contention that the phrase "a place of business" unambiguously means only such a structural office or a mailing address.

We see nothing in the legislative history of section 1742, nothing in the regulations adopted by the Director of Industrial Relations setting forth procedures for wage and penalty assessment review hearings (see § 1742, subd. (d); Cal. Code Regs., tit. 8, § 17201 et seq.), and nothing in the Contractors' State License Law (Bus. & Prof. Code, § 7000 et seq.) or in the rules and regulations adopted by the Contractors' State License Board to carry out that law (see Bus. & Prof. Code, §§ 7000.5, 7008; Cal. Code Regs., tit. 16, § 810 et seq.), which would lend any support for the view that a

contractor's or subcontractor's "place of business" must be only the location of a structural office or the location of a mailing address. We see no mention of the phrase "place of business" in any of those other statutes or in any of those rules and regulations. (See, e.g., Cal. Code Regs., tit. 16, § 863, subd. (d)(4), noting that a licensed contractor has an "address of record.") The DLSE also points out that a contractor who has an out-of-state place of business may contract with an awarding body to work on a public works project in California, and that interpreting "a place of business" to mean only a structural office or a mailing address, as argued by Pacific and Davis, might result in a scenario in which no judgment could ever be entered against such a contractor, thus again frustrating the prevailing wage law's objective of protecting and benefitting employees on public works projects.

It is also beneficial to look to section 225.5, which provides for civil penalties for violations of various Labor Code provisions. Like section 1742, subdivision (d), section 225.5 allows for the filing of a certified copy of a final assessment of a civil penalty with "the superior court in *any county in which the* [*person assessed*] *has or had a place of business.* The clerk, immediately upon the filing, shall enter judgment . . . ." (§ 1742, subd. (d), italics added.) This specific provision was added in 1988, replacing a provision which allowed the Labor Commissioner to file a civil action to recover civil penalties "in any court of competent jurisdiction." The proper venue for any such statutory action is where the labor was performed. (Code Civ. Proc., § 395, subd. (a).) Like Labor Code section 1742, section 225.5 was modified to streamline the collection process for collecting past due wages, and not to require the Labor Commissioner to file a civil action to collect the wages and penalties.

In *People v. Marotta* (1981) 128 Cal.App.3d Supp. 1 [180 Cal.Rptr. 611] the court noted that "[t]he term 'place of business' has no set or established meaning in California case or code law." (*Id.* at p. Supp. 6.) Appellants cite a number of cases in their attempt to persuade us that the phrase "a place of business" in section 1742, subdivision (d) should be construed more narrowly than to mean a place where a contractor or subcontractor conducts its business. None of these cases construe the Labor Code statute we deal with here, and we do not find them particularly helpful to our attempt to understand its meaning. Insofar as these cases do consistently apply the principle of statutory construction that a statute should be construed to promote rather than defeat its general purpose, we do not find them supportive of appellants' more restrictive interpretation of section 1742, subdivision (d).

In *People v. Wooten* (1985) 168 Cal.App.3d 168 [214 Cal.Rptr. 36] (*Wooten*), this court refused to find that a bounty hunter's vehicle was his "place of business" under the meaning of Penal Code section 12026, a statute

declaring that a prohibition against carrying a concealed weapon " 'shall not be construed to prohibit any citizen . . . from owning, possessing, or keeping within his place of residence or place of business any . . . firearm capable of being concealed upon the person . . . .' " (*Wooten, supra,* 168 Cal.App.3d at p. 172, fn. 1.) This court observed that bounty hunters do not do business in their vehicles and that "[t]heir job is to get out of their car and arrest bail jumpers, not to run over them." (*Id.* at p. 173.) We further noted that the construction urged by the appellant in *Wooten* "would frustrate the obvious legislative purpose of" (*ibid.*) the concealed weapon statute because "even convicted felons . . . could easily set themselves up as traveling salesmen and carry a concealed weapon in their car with impunity" (*ibid.*). Construing the words "a place of business" in the Labor Code statute to mean a place where the contractor or subcontractor conducts business would appear to promote, not frustrate, the purpose of the statute.

Pacific calls our attention to language in *Wooten* stating that "[t]he natural meaning of the term 'place of business' is a fixed location, simply because almost all businesses are conducted in some office, store or other building." (*Wooten, supra,* 168 Cal.App.3d at p. 173.) We have no quarrel with this language, but we do not think it helps appellants. The location of the Multi-Use and Administration Building at Wilson School in Tulare County is "fixed." It is a building and does not travel like a bounty hunter's car. Section 1742, subdivision (d) uses the language "any county in which the affected contractor or subcontractor . . . has or had a place of business." It does not say "has or had its principal place of business," or even "has or had its place of business." It uses no language suggesting that there can be only one location at which a contractor or subcontractor "has or had a place of business." Pacific argues that "[i]f the Legislature had intended contractors and subcontractors to be subject to DLSE judgments in any county where they had ever conducted business it would have said so." We think it did. It did not choose, however, to limit the entering of DLSE judgments to counties in which contractors and subcontractors performed work on public works contracts. The more expansive term "a place of business" also includes a contractor's or subcontractor's structural office, even if that office is located in a different county than the county in which work on a public works contract was performed. We do not view our construction of section 1742, subdivision (b) to be "absurd" as Davis argues, but rather as furthering the legislative goal of facilitating the ability of the DLSE to obtain a judgment against a contractor or subcontractor against whom an administrative "final order" has been obtained.

Davis's reliance on *Creditors v. Consumer's Lumber Co.* (1893) 98 Cal. 318 [33 P. 196] (*Creditors*) and *State of Connecticut v. Lutters* (2004) 270 Conn.

198 [853 A.2d 434] is similarly unpersuasive. The statute at issue in *Creditors*, "Section 8 of the Insolvency Act" (*Creditors, supra*, 98 Cal. at p. 318), required a petition to be filed in the county where the " 'debtor resides, or has his place of business' " (*id.* at p. 319). The court stated that even if the company's "principal place of business" as stated in its articles of incorporation was in San Francisco County, its "place of business" for purposes of the Insolvency Act was the place in Humboldt County where it actually conducted its business. "[I]ts mill was located in Humboldt County; it carried on all its operations there; it contracted its liabilities there and there its creditors lived. Under the statute it had its place of business in Humboldt County, . . . and it follows that the petition by the creditors was filed in the proper county. Under this construction of the statute, it becomes immaterial to examine the ruling of the court as to the rejection, as evidence, of a certified copy of the original articles of incorporation." (*Creditors*, at pp. 319–320.)

■ *Creditors* thus actually appears to support, rather than detract from, our view that a place where a contractor or subcontractor conducts business is "a place of business" of that contractor or subcontractor. *State of Connecticut v. Lutters, supra*, 853 A.2d 434 approved *Wooten*'s view that a motor vehicle is not a "place of business." "[W]e generally think of a motor vehicle as mobile personal property that, at any point in time, *occupies* a particular place but that is not, *itself*, a place. Even in circumstances in which a motor vehicle is integral to one's business, we usually do not refer to that motor vehicle as the *place* where that business is *located*." (*Id.* at p. 440.) The DLSE is not claiming that a motor vehicle is "a place of business" within the meaning of section 1742, subdivision (d). Nor is it claiming that the jobsite in Tulare County is "*the* place of business" of appellants, but rather only that each appellant "has or had *a* place of business" there. (See *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1396 [117 Cal.Rptr.3d 377, 241 P.3d 870] [the indefinite article "a" is used to modify nonspecific nouns, while use of the definite article "the" is used to refer to a specific place].)

## DISPOSITION

The order of the superior court denying the motion of Davis to vacate the final order of assessment and judgment is reversed. On remand, the court shall address Davis's motion for relief on grounds of extrinsic fraud on its merits. If the court grants the motion, the court shall vacate the final order of assessment and judgment against Davis and order the Director of the

Department of Industrial Relations to grant Davis's request for review pursuant to section 1742 of the assessment against Davis. If the court denies the motion, the Tulare County judgment against Davis shall stand. The order of the superior court denying the motion of Pacific to vacate the final judgment is affirmed. Each side to bear their own costs on appeal.

Gomes, Acting P. J., and Dawson, J., concurred.