Filed 9/25/24  AWI Builders v. Payne CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| AWI BUILDERS, INC. et al., | B322626 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC696666) |
| v. | |
| HAROLD T. PAYNE, as Successor in Interest, etc., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert Broadbelt, Judge.  Reversed with instructions.

Rob Bonta, Attorney General, Jodi L. Cleesattle, Assistant Attorney General, Pamela J. Holmes, Donna M. Dean and Shirley R. Sullinger, Attorneys General for Defendant and Appellant.

Pacheco & Neach, Rod Pacheco; Feldman & Associates and Mark Feldman for Plaintiffs and Respondents.

Plaintiffs AWI Builders, Inc., and its principals, Zhirayr "Robert" Mekikyan and Anna Mekikyan, sued numerous entities and individuals involved with a state Division of Labor Standards Enforcement (DLSE) investigation of their business practices. Plaintiffs' third amended complaint included a federal civil rights claim under 42 U.S.C. section 1983 (section 1983) alleging that defendant Susan Nakagama, a DLSE employee, violated their due process rights in both her official and individual capacities by participating in a conspiracy to unlawfully investigate plaintiffs and withholding and instructing a subordinate DLSE employee to withhold documents from plaintiffs during the investigation. Nakagama moved to strike the section 1983 cause of action under the anti-SLAPP statute, Code of Civil Procedure section 425.16.[1]

The trial court granted the motion as to the official capacity claim but denied it as to the individual capacity claim. Although it found that Nakagama met her first-step burden of showing that the individual capacity cause of action arose from protected activity (§ 425.16, subd. (e)(2)), it also found that plaintiffs carried their second-step burden of showing a probability of prevailing on the merits. The trial court rejected Nakagama's assertions of absolute prosecutorial immunity, qualified immunity, and litigation privilege under Civil Code section 47, subdivision (b) (section 47).

Nakagama died during the pendency of this appeal. Her successor in interest and personal representative, Harold T. Payne, now contends that the trial court should have granted the

---

[1] "SLAPP" stands for "strategic lawsuits against public participation." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 139.) All further undesignated statutory references are to the Code of Civil Procedure.

anti-SLAPP motion in full. In addition to asserting the immunity and privilege arguments raised below, he contends that plaintiffs failed to meet their burden of showing a probability of prevailing on the merits. Plaintiffs respond that Nakagama failed to carry her burden at the first step below. They further contend that even if the matter is subject to the anti-SLAPP statute, the trial court properly rejected Nakagama's assertions of privilege and immunity, and we should not address Payne's new argument regarding the merits of the claim.

We reverse. The trial court correctly found the cause of action subject to the anti-SLAPP statute. However, its analysis at the second step of the anti-SLAPP inquiry was inadequate, as was plaintiffs' showing. We exercise our discretion to consider Payne's belatedly raised legal argument regarding plaintiffs' likelihood of prevailing on the merits, which is persuasive in light of plaintiffs' failure to plead or demonstrate the lack of adequate state remedies for the alleged due process violation. We need not and do not address the arguments regarding privilege and immunity.

## FACTUAL BACKGROUND

Plaintiffs allege the following in the operative third amended complaint.

Between 2011 and 2013, after a public and competitive bid process, Riverside County awarded plaintiffs three public works contracts: the $16.9 million "Mead Valley Project," the $14 million "Public Defender Project," and the $13.5 million "Medical Center Project." Plaintiffs were also awarded a $10.5 million contract in Orange County, the "OC Fair Project," in 2013.

In mid-to-late 2013, plaintiffs discovered significant structural problems with the building in the Public Defender

3

Project that were unknown at the time of the bid. The change orders necessary to account for the issues "became significant points of contention between AWI and Riverside County." Riverside County subsequently terminated AWI's contract on the Public Defender Project and awarded the project to a different construction company, increasing the amount of the contract from $14 million to $32 million. In late 2013, after "pointed communications" with Riverside County, AWI obtained counsel and "identified the possibility of a lawsuit and government claims regarding the county's refusal to pay AWI for work it had performed under the contract awarded."

Plaintiffs allege that refusal to pay contractors was "a pattern and practice for Riverside County." They further allege that Riverside County also had a pattern of "harass[ing] contractors who were possible litigants with a host of crushing abuses, directed at drying up all sources of revenue by withholding payments, using a labor compliance firm to generate specious complaints to the [DLSE], which would then levy exponential fines against the contentious contractor, and finally to falsely generate criminal investigations which would either put the company out of business and or [*sic*] put the owners in prison."

Pursuant to this alleged "playbook," in the "early months of 2014" Riverside County, through "straw man" company GKK Works, hired a private labor consulting firm, Alliant Consulting, and Alliant's president, Christa Schott, to start a specious investigation into plaintiffs. Although GKK Works hired Alliant and Schott, Schott "took her orders from only two entities, Riverside County Administration officials and the Orange County District Attorney's Office (OCDA), and had little or no contact

4

with GKK." By June 2014, despite having uncovered no evidence of wrongdoing by plaintiffs, Schott "succeeded in convincing DLSE . . . to open an investigation" into plaintiffs. Schott worked closely with a DLSE employee, Maria Sandoval, and provided Sandoval with "fabricated" "investigative materials." Sandoval "spearheaded" DLSE's investigation, "which was overseen by Nakagama, and spurred on by Schott." At Schott's "constant and aggressive insistence throughout 2014 and 2015," DLSE filed "various labor code administrative claims" against plaintiffs in 2015. The DLSE claims enabled Riverside County "to withhold payments of over millions of dollars [*sic*] in monies owed to AWI."

While the DLSE was investigating, plaintiffs "sought to defend themselves" and also continued their efforts to obtain payment from Riverside County on the various projects, filing government claims and eventually suing Riverside County in 2015. In 2014, plaintiffs, through their counsel, "made requests for documents from DLSE" to defend against the administrative claims levied against them. Sandoval contacted Schott, who in turn contacted the Riverside and Orange County district attorneys' offices. Schott "made every attempt to convince Sandoval not to turn over documents Schott had created or given to Sandoval, in an effort to hide her unlawful involvement." Sandoval "consulted with her supervisor Nakagama, who also instructed Sandoval not to turn over documents." During the deposition in which Sandoval testified to receiving this instruction, which occurred "in a related civil case in Orange County," Sandoval also stated that Nakagama told her "that the instruction to conceal documents was a directive that came directly from" the OCDA and an attorney there. Plaintiffs allege that Riverside County and OCDA personnel "convinced"

5

Nakagama and Sandoval to "also withhold numerous documents" plaintiffs requested in 2014 and 2015, "in violation of due process protections afforded the accused in administrative hearings." In her own deposition in the related case, Nakagama "admitted" that concealing documents from the subject of an administrative investigation "was not only a violation of DLSE regulations, but also of due process rights." Plaintiffs were unaware of the concealment until "civil discovery in related litigation against Riverside County."

Meanwhile, Alliant and Schott concurrently "stepped up the pressure on AWI" and "badgered" Riverside County's district attorney's office to initiate criminal prosecutions against AWI. Alliant and Schott similarly "badgered" Orange County to investigate and prosecute plaintiffs. Orange County initiated an investigation into plaintiffs in 2015. In 2015, Schott visited plaintiffs' business offices without a warrant, broke into locked filing cabinets, and photocopied documents contained therein. On a separate occasion in 2015, Schott met with Tony Hawk, a "high-ranking job superintendent for AWI on one of the Riverside projects," and paid him to provide her with plaintiffs' confidential records that later served as the basis for multiple search warrants executed by OCDA and Riverside County in October 2015.

Many "business documents, an extensive amount of computer equipment, thumb drives, external hard drives, an iPhone and a credit card were seized" in connection with the search warrants. The loss of these records "caused havoc" for plaintiffs during their efforts to refute the DLSE's allegations of Labor Code violations and seek redress against Riverside County because they had no access to their electronic or written records.

6

After plaintiffs filed a successful motion to compel in a case against Riverside County, a forensic examination of Alliant's and Schott's computers "revealed well over 80,000 pages of documents" that had been concealed. Riverside County ultimately settled all plaintiffs' claims against it for $4.5 million.

Neither OCDA nor Riverside County filed a criminal complaint against plaintiffs. However, the DLSE issued several civil wage and penalty assessments against plaintiffs, including an "over $500,000" assessment related to the Public Defender Project, and assessments totaling approximately $460,000 related to the OC Fair Project.

OCDA also filed a civil case against plaintiffs in February 2018. The deposition testimony from Sandoval and Nakagama discussed above was elicited in that action.

## PROCEDURAL HISTORY

Plaintiffs filed their initial complaint on March 6, 2018, a first amended complaint on March 29, 2018, and a second amended complaint on April 20, 2018. The second amended complaint asserted causes of action for violation of civil rights pursuant to section 1983; a *Monell*[2] claim under section 1983; negligent interference with contractual relations; negligent interference with prospective economic opportunity; intentional interference with contractual relations; intentional interference with prospective economic opportunity; and negligent supervision. Nakagama was not named as a defendant.

Numerous defendants filed anti-SLAPP motions to strike the second amended complaint, and some filed demurrers. The trial court largely granted the anti-SLAPP motions, including

---

[2] *Monell v. Department of Social Services* (1978) 436 U.S. 658 (*Monell*).

7

those filed by Alliant and Schott, GKK Works, various Orange County defendants, the State of California, and Sandoval. (See *AWI Builders, Inc. v. Alliant Consulting* (Oct. 22, 2021, B294662, B297189, B298699, B300834) [nonpub. opn.].)  Notably, it denied Sandoval's motion to strike in part, as to the section 1983 cause of action in her individual capacity, and also overruled her demurrer to that cause of action.  Plaintiffs appealed the court's orders; no defendant cross-appealed.  The appeals were consolidated, and a different panel of this court affirmed all the orders.  (See *AWI Builders, Inc. v. Alliant Consulting* (Oct. 22, 2021, B294662, B297189, B298699, B300834) [nonpub. opn.].)

In January 2020, while the appeals were pending, plaintiffs filed a motion for leave to file a third amended complaint to add Nakagama as a defendant in the section 1983 cause of action. They asserted that "the facts necessitating the amendment came to light during the course of discovery" in the Orange County civil lawsuit, when Sandoval testified during her July 2018 deposition that Nakagama directed her to withhold documents from plaintiffs.  The trial court granted plaintiffs leave to file the third amended complaint on October 9, 2020, over the objections of multiple defendants.

Plaintiffs filed the operative third amended complaint on October 16, 2020.  In the section 1983 cause of action, the Mekikyans (not AWI) alleged that Nakagama and Sandoval, while acting under color of law, "without cause or justification, intentionally and maliciously deprived Plaintiffs . . . of rights secured to them by the First, Fourth and Fourteenth Amendments to the United States Constitution in that each of them conspired and acted to create, cause, encourage or seek unlawful investigations and prosecutions by the Orange and

8

Riverside County District Attorney's Offices" and "administrative prosecutions by the DLSE."  The Mekikyans alleged that they "suffered and sustained great physical, emotional and professional damages," and their businesses "suffered by the loss of numerous projects and business opportunities in the millions of dollars."

Nakagama filed an anti-SLAPP motion to strike the section 1983 cause of action in December 2020.  She argued that her alleged instructions to Sandoval were protected communications under section 425.16, subdivisions (e)(1) and (e)(2), because they were made in preparation for or anticipation of litigation, and under section 425.16, subdivision (e)(4) because they were made in connection with an issue of widespread public interest. Nakagama further argued that plaintiffs could not meet their burden of showing a probability of prevailing on the merits.  She contended that she was immune from liability in her official capacity because individuals acting in an official capacity are not "persons" for purposes of section 1983.  Nakagama also argued that plaintiffs could not prevail on their individual capacity claim.  Specifically, she argued there was no evidence that she personally participated in violating plaintiffs' due process rights because Sandoval's deposition testimony was inadmissible hearsay and her own deposition testimony indicated that she only directed Sandoval to redact the documents at issue.  Nakagama additionally argued that plaintiffs "cannot overcome" various forms of immunity and privilege, including absolute prosecutorial immunity, qualified immunity, and the section 47 litigation privilege.

Plaintiffs filed a written opposition to Nakagama's anti-SLAPP motion in February 2021.  They argued that the anti-

SLAPP statute did not apply under principles of federal preemption and because the gravamen of their complaint, the withholding of documents during an investigation, is not protected conduct under section 425.16, subdivisions (e)(1), (e)(2), or (e)(4). Plaintiffs argued in the alternative that they demonstrated a probability of prevailing on the merits even if the anti-SLAPP statute did apply. They asserted that their evidence, including Sandoval's deposition testimony, Nakagama's deposition testimony, a DLSE policy manual, and a declaration from Robert Mekikyan, demonstrated a prima facie claim for violation of their due process rights. They further argued that they were likely to prevail on the official capacity claim because they sought equitable relief; that prosecutorial immunity did not apply because the alleged wrongdoing did not occur during a judicial phase; that Nakagama was not entitled to qualified immunity because the evidence showed she knew she was acting wrongly; and that the litigation privilege did not apply to section 1983 claims. Nakagama filed a reply the following week.

The trial court heard the motion in June 2022. In its written order, the court rejected plaintiffs' preemption argument. It then found that Nakagama met her first-step burden of establishing that the cause of action arose from activity protected under section 425.16, subdivision (e)(2), because the gravamen of plaintiffs' cause of action concerned Nakagama's instructions, which were made in connection with official proceedings. At the second step, the court first found that plaintiffs met their burden of demonstrating a probability of prevailing on the merits because the Sandoval deposition testimony established a prima facie showing that Nakagama ordered the withholding of documents to which plaintiffs were entitled. However, it then

10

considered Nakagama's affirmative defenses, and concluded that she was immune from suit in her official capacity. The trial court rejected Nakagama's assertions of immunity and privilege in her individual capacity. The court accordingly granted the motion in part, as to the official capacity claim, and denied it in part, as to the individual capacity claim.

Nakagama timely appealed. After her death, her personal representative, Payne, was substituted into the case.

## DISCUSSION

### I.     Legal Standards

Under section 425.16, "[a] cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster Energy*), citing § 425.16, subd. (b)(1).)

"Anti-SLAPP motions are evaluated through a two-step process." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) At the first step, "the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Ibid.*; § 425.16, subds. (b), (e).) To carry that burden, the defendant must identify the acts upon which each challenged claim rests and show how those acts are protected under a statutorily defined category of protected activity. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).) Section 425.16, subdivision (e) describes four categories of acts "'in furtherance of a person's right of petition or

11

free speech'": "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at p. 1062.) Courts consider the elements of the challenged claim and what actions by the defendant supply those elements and thus form the basis for liability. (*Id.* at p. 1063.) "A claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Id.* at p. 1060.)

If the moving defendant carries its burden at the first step, the analysis proceeds to the second step, at which the plaintiff must demonstrate that the claim has at least "minimal merit." (*Park, supra,* 2 Cal.5th at p. 1062.) This second step is analogous to a summary judgment procedure. (*Monster Energy, supra,* 7 Cal.5th at p. 788.) "The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.

12

It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.  [Citation.]  "[C]laims with the requisite minimal merit may proceed."'" (*Ibid.*, quoting *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385.)

We review the trial court's determination on a special motion to strike de novo.  Like the trial court, "'[w]e consider "the pleadings, and supporting and opposing affidavits ... upon which the liability or defense is based."  [Citation.]  However, we neither "weigh credibility [nor] compare the weight of the evidence.  Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law."  [Citation.]'  [Citation.]" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 326.)

## II.    First Step

At the first step of the analysis, the trial court found that Nakagama met her burden of showing that the section 1983 cause of action against Nakagama in her individual capacity came within the ambit of section 425.16, subdivision (e)(2). Subdivision (e)(2) protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding by law" (§ 425.16, subd. (e)(2)), even if the litigation has not yet commenced.  (See *Flatley v. Mauro, supra,* 39 Cal.4th at p. 322, fn. 11.)  The court concluded plaintiffs' cause of action arose from the instructions Nakagama gave to Sandoval in connection with the DLSE investigation, an official proceeding within the meaning of section 425.16, subdivision (e)(2).

13

Payne contends the trial court's analysis was correct.  He further argues that the trial court also could have found that Nakagama met her first-step burden under section 425.16, subdivision (e)(4).  In response, plaintiffs argue that the trial court should have denied the anti-SLAPP motion at the first step rather than the second, because the gravamen of their claim against Nakagama was the "unlawful and unconstitutional withholding of documents," which is not protected conduct under section 425.16, subdivision (e).  Although plaintiffs did not file a cross-appeal, they are permitted to raise this argument under section 906, the purpose of which is "'to allow a respondent to assert a legal theory which may result in affirmance of the judgment.'" (*Khorsand v. Liberty Mutual Fire Ins. Co.* (2018) 20 Cal.App.5th 1028, 1034.)

There is no dispute that the DLSE investigation and hearing process in which the alleged conduct took place "qualify as official proceedings authorized by law for purposes of . . . section 425.16, subdivision (e)(2)." (*County of Riverside v. Public Employment Relations Board* (2016) 246 Cal.App.4th 20, 31.) The question thus is whether the conduct that forms the basis of plaintiffs' claim is protected activity.  "The 'gravamen is defined by the *acts on which liability is based*, not some philosophical thrust or legal essence of the cause of action.'" (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 111; see also *Bonni*, *supra*, 11 Cal.5th at p. 1012.)

A section 1983 claim has two essential elements: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." (*McAllister v. Los Angeles Unified School*

14

*District* (2013) 216 Cal.App.4th 1198, 1207.) Here, plaintiffs allege that Nakagama, while acting under color of law, denied plaintiffs due process by instructing a subordinate employee to withhold documents from them despite her awareness that plaintiffs were entitled to the documents. They further allege that Riverside County and Orange County officials "convinced" Nakagama "in 2014 and 2015 to also withhold numerous documents [plaintiffs] had requested in violation of due process protections afforded the accused in administrative hearings." Essentially, Payne argues we should focus exclusively on the allegation that Nakagama instructed Sandoval to withhold the documents, while plaintiffs contend we should focus exclusively on the allegation that Nakagama personally withheld the documents.

However, under *Bonni, supra*, 11 Cal.5th at p. 1012, "each act or set of acts must be analyzed separately," and Payne bears the burden of showing that each allegation supporting the claim of recovery rests on protected activity. As to the instructions, Payne argues that they are statements or writings related to the investigation and gathering of evidence in anticipation of an official proceeding. We agree. Apparently plaintiffs do as well; they do not dispute that Nakagama's instructions to Sandoval constitute protected activity. Instead, the entirety of their argument is predicated on their position that the conduct at issue is the withholding of documents.

To the extent plaintiffs' claim rests upon Nakagama's alleged withholding of documents, Payne asserts that this court "previously held that the failure to disclose information in connection with an official proceeding falls within section [*sic*] (e)(2) of the anti-SLAPP statute." Although she cites an older

case from this Division, *Suarez v. Trigg Laboratories, Inc.* (2016) 3 Cal.App.5th 118, a different panel of this court reached the same conclusion in the previous appeal in this very case. As explained at length in *AWI Builders, Inc. v. Alliant Consulting, Inc.*, *supra*, "the claims arose from Sandoval's withholding of documents in the course of an official proceeding. That conduct is protected under subdivision (e)(2) of the anti-SLAPP statute."

Payne also contends that the withholding of documents constitutes protected activity under section 425.16, subdivision (e)(4), which covers "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) We agree. *AWI Builders, Inc. v. Alliant Consulting, Inc.* held that "the conduct at issue"—the alleged withholding of documents—"is protected under the catchall provision of section 425.16, subdivision (e)(4)." In distinguishing the cases plaintiffs again cite here, most prominently *Anderson v. Geist* (2015) 236 Cal.App.4th 79, the panel emphasized that the withholding of documents occurred "during the course of an administrative proceeding in which she [there, Sandoval] was a representative of one of the parties, i.e., the DLSE, an agency of the State, and thus was part of the petitioning conduct. The determination of what documents should be withheld involved some exercise of discretion, since DLSE is required under Labor Code section 1736 to keep confidential any information that may identify any employee who reported a violation." It continued, "the withholding of documents in the present case was done in connection with an administrative proceeding involving an

16

important public issue, i.e., the violation of labor laws by contractors on a public work project."

For the same reasons as previously stated in *AWI Builders, Inc. v. Alliant Consulting, Inc.*, we conclude that both forms of challenged conduct, the instructions to withhold documents and the actual withholding of the documents, constitute protected activity.

## III. Second Step

At the second step of the anti-SLAPP analysis, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the merits of the claim. In an abbreviated analysis, the trial court found that plaintiffs carried that burden by submitting "the deposition of Sandoval to establish that [Nakagama], as a regional supervisor of the DLSE, ordered the withholding of documents to which plaintiffs were entitled." The trial court rejected Nakagama's contention that plaintiffs could not show her personal involvement in the alleged deprivation of due process, because the parties had presented conflicting evidence on that point and courts do not resolve evidentiary conflicts in connection with anti-SLAPP motions. The court further rejected Nakagama's arguments that plaintiffs could not prevail because she had absolute immunity, qualified immunity, and/or the litigation privilege barred the claim.

Payne now contends that the trial court incorrectly concluded that plaintiffs met their burden of showing a probability of prevailing. He argues that "any allegation that exculpatory documents were withheld from plaintiffs during a DLSE action could have been readily remedied by plaintiffs pursuant to the Labor Code, Code of Regulations, and Code of Civil Procedure, including motions to exclude evidence and

17

petition for writ of mandate. Plaintiffs did not allege in the TAC if they employed these procedural tools to remedy the deprivation of their procedural due process rights. There is no evidence that Nakagama's alleged withholding of documents resulted in an adverse binding order against plaintiffs in a DLSE action." In short, Payne argues that plaintiffs cannot prevail because they did not allege or show that state remedies for the alleged due process violation were inadequate.[3]

Payne acknowledges that his current argument differs from those raised below, and requests that we exercise our discretion to consider it because it presents only issues of law. Plaintiffs respond that Payne has waived the current argument by failing to present it below and has not demonstrated why we should exercise our discretion in his favor. They also substantively oppose the new argument; we address these concerns below.

As a general rule, a reviewing court will not consider claims made for the first time on appeal which could have been but were not presented to the trial court. (*Truck Ins. Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635.) However, application of the forfeiture rule is not automatic, and we have discretion to consider pure questions of law raised for the first time on appeal.

---

[3] Although Nakagama argued below that plaintiffs failed to meet their burden, her theory was that plaintiffs lacked evidence that she "personally participated in violating plaintiffs [*sic*] due process rights" or "conspired with Sandoval, Schott, or OCDA personnel to prevent plaintiffs from lawfully accessing documents needed in DLSE administrative hearings to defend themselves, or prevented plaintiffs from defending themselves without the documents."

(*Cox v. Griffin* (2019) 34 Cal.App.5th 440, 450 ["[C]ourts have discretion to consider a new theory on appeal if it involves a legal question based on undisputed facts"].) Because this appeal raises a purely legal issue, and plaintiffs have responded to the new contention, we exercise our discretion to consider it during our de novo review of plaintiffs' second-step showing.

At the second step of the anti-SLAPP analysis, the plaintiff bears the burden of demonstrating that the challenged claim is legally sufficient and supported by a sufficient prima facie factual showing to sustain a judgment. (*Monster Energy*, *supra*, 7 Cal.5th at p. 788.) Here, the challenged claim alleges a violation of due process under federal law in connection with an administrative hearing. Despite their assertion that this lawsuit does not seek review of a civil wage and penalty assessment, plaintiffs allege they responded to "various labor code administrative claims . . . [a]s allowed by law" by requesting the documents on which the DLSE relied, and DLSE, through Nakagama, did not provide them. Plaintiffs' supporting evidence consists primarily of Sandoval's deposition testimony that Nakagama instructed her to withhold the documents. The claim and showing are not legally sufficient.

The allegations and record are not adequate to demonstrate a probability that plaintiffs will prevail on the merits of a constitutional due process claim. We look to federal law to determine the sufficiency of a complaint alleging a federal civil rights cause of action under section 1983. (*Martinez v. City of Clovis* (2023) 90 Cal.App.5th 193, 254.) In the context of a procedural due process claim, federal law provides that "[w]hen state remedies are adequate to protect an individual's procedural due process, a section 1983 action alleging a violation of those

19

rights will not stand." (*Brogan v. San Mateo County* (1990) 901 F.2d 762, 764; see also *Jefferson v. Jefferson County Public School System* (6th Cir. 2004) 360 F.3d 583, 588 ["Plaintiff may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes or remedies to redress her due process violations."].) "Although one need not exhaust state remedies before bringing a Section 1983 action claiming a violation of procedural due process, one must nevertheless prove as an element of that claim that state procedural remedies are inadequate." (*Marino v. Ameruso* (2d. Cir. 1988) 837 F.2d 45, 47.) It is axiomatic that we cannot determine whether plaintiff has sufficiently alleged a cause of action for lack of due process without knowing what process is due." (*Van Horn v. Department of Toxic Substances Control* (2014) 231 Cal.App.4th 1287, 1295.)

We therefore consider the procedural remedies available under California law in DLSE administrative hearing cases, particularly the statutes dealing with discovery in administrative hearings. "Generally, there is no due process right to prehearing discovery in administrative hearing cases." (*Cimarusti v. Superior Court* (2000) 79 Cal.App.4th 799, 808.) "The scope of discovery in administrative hearings is governed by statute and the agency's discretion." (*Id.* at pp. 808-809.) The relevant statutes here are Labor Code sections 1741 and 1742. Labor Code section 1741 authorizes the Labor Commissioner or his or her designee to conduct investigations to determine if wage laws have been violated. (Lab. Code, § 1741, subd. (a).) If a violation is found, the Commissioner "shall with reasonable promptness issue a civil wage and penalty assessment to the contractor or subcontractor, or both. The assessment shall be in writing, shall

20

describe the nature of the violation and the amount of wages, penalties, and forfeitures due, and shall include the basis for the assessment. . . . The assessment shall advise the contractor and subcontractor of the procedure for obtaining review of the assessment." (Lab. Code, § 1741, subd. (a).) It must be "sufficiently detailed to provide fair notice to the contractor or subcontractor of the issues at the hearing." (Lab. Code, § 1742, subd. (b).)

Labor Code section 1742 gives a contractor or subcontractor the right to "review of a civil wage and penalty assessment" if a request for review is made within 60 days after the assessment is served. (Lab. Code, § 1742, subd. (a).) The contractor or subcontractor "shall have the burden of proving that the basis for the civil wage and penalty assessment is incorrect," but also "shall be provided an opportunity to review evidence to be utilized by the Labor Commissioner at the hearing within 20 days of the receipt of the written request for a hearing." (Lab. Code, § 1742, subd. (b).) If the Commissioner fails "to make evidence available for review as required by Labor Code section 1742(b) and this Rule [Cal. Code Regs., tit. 8, § 17224], [*sic*] shall preclude the Enforcing Agency from introducing such evidence in proceedings before the Hearing Officer or the Director." (Cal. Code Regs., tit. 8, § 17224, subd. (d).) If the contractor or subcontractor is dissatisfied with the hearing procedures or resultant decision, he or she may seek review by filing a petition for writ of mandate in the superior court. (Lab. Code, § 1742, subd. (c); *Mobley v. Los Angeles Unified School District* (2001) 90 Cal.App.4th 1221, 1241.) If the contractor or subcontractor believes he or she was deprived of the opportunity to fully present a claim or defense due to extrinsic fraud, he or she may move to

vacate the resultant judgment. (See *Department of Industrial Relations, Division of Labor Standards Enforcement v. Davis Moreno Construction, Inc.* (2011) 193 Cal.App.4th 560, 566, 570-573.)

The record contains two civil wage and penalty assessments related to the OC Fair Project, issued in September and October 2015. It also alludes to but does not contain a civil wage and penalty assessment "over $500,000" related to the Public Defender Project that appears to have been issued around the same time. Plaintiffs do not specify the civil wage and penalty assessment(s) for which they sought review or related documents; they assert only that they made requests for documents in 2014—long before the assessments were issued—and in 2015, and those requests were denied. There are no allegations in the operative complaint or evidence in the record regarding the hearings on the petitions, their outcomes, or plaintiffs' efforts to seek review. The complaint alleges only that unspecified documents were withheld in connection with unspecified proceedings, and plaintiffs' evidence indicates only that Nakagama may have been involved in that withholding.

The Labor Code provisions, related regulations, and other aspects of state law discussed above impose requirements and provide remedies aimed at ensuring that contractors and subcontractors receive due process in connection with civil wage and penalty assessments. The allegations and record are silent as to plaintiffs' utilization of these remedies or the adequacy or inadequacy thereof. This is fatal to their claim under federal law.

Plaintiffs contend this is "absurd" and "equivalent to telling a criminal defendant that he must prove he did not rob a store while at the same time refusing to disclose to him an alibi

22

witness, but the defendant can prevent the prosecutor calling the alibi witness at trial." However, federal law clearly provides that state remedies for procedural due process violations must be taken into consideration when a plaintiff seeks to assert a section 1983 claim for violation of due process. Plaintiffs also assert that Labor Code sections 1741 and 1742 do not apply to "limit [their] available remedies" because they "do not seek review for a civil wage and penalty assessment . . . [or] the withholding of contract payments." These statutes are the law that gave plaintiffs the right to request documents from DLSE after "various labor code administrative claims were filed by DLSE in 2015." They govern the scope of discovery and other process to which plaintiffs are entitled and provide a framework for plaintiffs to seek relief from civil wage and penalty assessments they believe are inaccurate or improper. Plaintiffs do not cite any authority for the proposition that Labor Code sections 1741 and 1742 and the procedural remedies provided therein are irrelevant to their section 1983 claim.

Plaintiffs assert they were "severely harmed" because the withholding of the unspecified documents prevented them from "adequately preparing for the various DLSE investigations and administrative proceedings"; forced them to incur "unnecessary attorney's fees, the costs of several settlements, and assessment of administrative penalties"; and deprived them of the ability "to counteract additional lawsuits and the various attacks on their reputation."[4] They did not present any evidence of these harms to the trial court, however. Instead, they sought to establish a

---

[4] Injury to one's reputation alone will not support a federal due process claim. (*Burt v. County of Orange* (2004) 120 Cal.App.4th 273, 283.)

23

probability of prevailing based solely on the allegedly wrongful withholding of documents during the administrative process. Similarly, the trial court's second-step analysis narrowly focused on the plaintiffs' evidence that documents were withheld rather than on the bigger picture of the procedural remedies available to plaintiffs and the adequacy thereof.

Finally, plaintiffs emphasize that Nakagama testified that she understood "due process" to mean "[p]roviding the contractors with information that would be relevant . . . to any allegations or issues against him." Nakagama's personal understanding of the contours of due process is not sufficient to demonstrate a probability that plaintiffs will prevail on their section 1983 claim against her. The ultimate question in a due process action is whether the plaintiff received the procedural due process to which he or she was legally entitled. Plaintiffs' allegations and evidentiary showing do not establish a likelihood that they will prevail on that question. We accordingly need not and do not address Payne's arguments regarding immunities and privilege.

## DISPOSITION

The order denying Nakagama's anti-SLAPP motion to strike the third amended complaint is reversed with directions to grant the motion and strike the complaint as to Nakagama and her personal representative Payne. The parties are to bear their own costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

CURREY, P. J.                                                    ZUKIN, J.

24